GALVAN and another, Plaintiffs and Respondents, v. MILWAUKEE HELLENIC COMMUNITY and another, Defendants and Appellants: PETERS and others, Defendants and Respondents.   [Case No. 174.]

BARUXIS, by Guardian *ad litem,* Plaintiff and Respondent, v. MILWAUKEE HELLENIC COMMUNITY and another, Defendants and Appellants: PETERS and others, Defendants and Respondents.   [Case No. 175.]

*February 3—March 3, 1964.*

601

For the appellants there were briefs by *Kivett & Kasdorf,* attorneys, and *Fred D. Huber, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Huber.*

For the respondents there was a brief by *Maurice M. Spracker* and *Robert M. Siegman,* both of Milwaukee, for Kathleen Baruxis; by *Backus, Waters & McClelland* of Milwaukee, for George G. Peters; and by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, for David M. Galvan and the Commercial Insurance Company of Newark, N. J., and oral argument by *Bernard J. Hankin.*

For Mary Lou Galvan and Ramona Posada there was a separate brief by *Henry J. Koster* of Milwaukee, and *Camp & Camp* of Milwaukee, and oral argument by *Mark M. Camp.*

HALLOWS, J.   The basic issues presented are whether the policy of Liberty Mutual issued to Milwaukee Hellenic Community includes Peters as an insured and if not whether the finding that Liberty Mutual and Milwaukee Hellenic Community had agreed a person in the circumstances of Peters was to be an insured can be sustained and the policy reformed.

The trial court was of the view the Milwaukee Hellenic Community and the Liberty Mutual had agreed that any member of the church would be an insured who operated an automobile not owned by the church while the automobile was being used for the benefit of the church, that the policy as issued afforded such protection, and no reformation of the policy was necessary. The trial court considered Peters, while not an agent, fell within the classification of the estimated 10 persons in "Class 2 employees" and was therefore an insured under the terms of the policy. We believe the trial court was in error in the construction of the terms of the policy and there is no credible evidence to sustain the finding the Milwaukee Hellenic Community and Liberty Mutual agreed a person in the circumstances of Peters was to be covered as an insured under the policy.

. The error in the trial court's interpretation of the policy is the failure to distinguish between who is covered as an insured and what is covered as a hazard. The standard printed part of the comprehensive liability policy is divided into three main divisions, insuring agreements, exclusions, and conditions. The adaptation of the printed parts of the policy to the particular needs of the insured is accomplished by declarations which contain the identification of the named insured, its business, term of the policy, amount and type of coverages, amount of premium, and other particulars. The declarations are supported by schedules which list the various hazards insured against both for general and automobile liability. The latter category (Item 4. Declarations, Description of Hazards-Automobile Liability, 3. Non-Owned Automobiles), is divided into "Class 1 persons" and "Class 2 employees." One person by name is listed under "Class 1 persons." In determining the average number of unidentified persons to be listed under Class 2 employees, Mr. Georges estimated two officers of each of the five societies associated with the church. The schedule therefore under this item contained the figure 10. Class 1 persons and Class 2 employees are expressly defined under the conditions of the policy in reference to the premium base.[1]

The named insured in the declarations is the Milwaukee Hellenic Community but the policy by its insuring agree-

---

[1] "When used as a premium basis: . . .

"(7)  the words 'Class 1 persons' mean the following persons, provided their usual duties in the business of the named insured include the use of non-owned automobiles: (a) all employees, including officers, of the named insured compensated for the use of such automobiles by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the named insured;

"(8)  the words 'Class 2 employees' mean all employees, including officers, of the named insured, not included in Class 1 persons."

ments enlarges, as is customary, the term "insured." [2] The policy includes besides the Milwaukee Hellenic Community as an insured, any executive officer using an automobile not owned by the church in its business excepting an automobile owned by such executive officer or a member of his household. No endorsement of the policy enlarges this definition of an insured on whose behalf the insurer agrees to pay under the terms of the policy, nor do the schedules perform such a function.

The use and purpose of schedules in this type of policy is not to enlarge the definition of insured in the insuring agreement or to afford personal insurance protection to those falling within the scope of the definition in the schedules but to list for rate-making purposes the hazards to which the insured may be exposed by reason of ownership and use of the property or by reason of the use of nonowned automobiles by other persons in the conduct of the insured's business and for whose activities on the theory of *respondeat superior* or agency the insured might be legally liable. Since the extent of these hazards cannot be definitely ascertained so far as automobile liability is concerned at the beginning of the policy period and fluctuate during its term, the policy is written on an advance premium basis with provisions for a retrospective rating on experience to determine the actual risk assumed and the earned premium therefor. Property,

---

[2] "The unqualified word 'insured' includes the named insured and also includes . . . (2) under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement: . . . (e) with respect to any non-owned automobile, to any executive officer if such automobile is owned by him or a member of the same household."

persons, and classes thereof listed and described in the schedules are factors in rate making, but that fact does not constitute such factors insureds.

Construing the various provisions of the insurance contract, we must conclude the persons named or unnamed falling into the class of Class 1 persons and Class 2 employees in the schedules are not insureds but are hazards against which the insured defined in the insuring agreement is protected. No question arises in this case of the operation of the omnibus clause because no owned automobile of the named insured is involved. The question is solely of non-owned automobile coverage and we conclude Peters was not an insured under the policy. A similar construction of this type of comprehensive liability policy has been given by the majority of jurisdictions.[3]

The contention is made the policy so construed does not reflect the agreement between the Milwaukee Hellenic Community and the Liberty Mutual. It is argued the trustees of the church and Mr. Georges intended the two officers of the five church societies to be additional insureds under the policy and specifically anyone who transported a member of the choir home from choir practice would be covered by the policy as an additional insured. We have carefully read and reread the testimony and we find no credible evidence that in negotiating for additional coverage with the Liberty Mutual Mr. Georges intended to protect as an insured anyone other than the Milwaukee Hellenic Community and its executive officers who might become liable by reason of church activities carried on by employees, officers, agents, or other per-

---

[3] *Webster v. Inland Supply Co.* (1936), 287 Ill. App. 567, 5 N. E. (2d) 849; *Linenschmidt v. Continental Casualty Co.* (1947), 356 Mo. 914, 204 S. W. (2d) 295; *MacLellan v. Liberty Mutual Ins. Co.* (Mass. 1963), 193 N. E. (2d) 577. Contra: *Le Blanc v. New Amsterdam Casualty Co.* (La. App. 1942), 8 So. (2d) 83; affirmed, 202 La. 857, 13 So. (2d) 245.

sons connected in some manner with church affairs. Mr. Georges was interested in protecting the church in its expanding building program and in its activities. He was also concerned with the personal safety of the choir members because of the neighborhood in which the church was located and wanted none to be stranded after choir practice without a ride home. If on behalf of the church he arranged such ride he intended the church would be protected if the driver carried no insurance or had insufficient insurance. He testified the policy issued was in accordance with his understanding of what he negotiated on behalf of the Milwaukee Hellenic Community.

It is true the defendant Peters and his cousin Miss Maris, the organist, testified that on some occasions Mr. Georges told members to arrange for a ride home from choir practice and not to worry about insurance because they were covered. But such testimony is directly contradicted by Mr. Georges. Even if the statements of Peters and Miss Maris could be taken as true, they fall far short of extending the church's insurance to the driver of the car or creating any grounds upon which the policy of insurance could be reformed.

We must conclude the finding of the trial court that the Milwaukee Hellenic Community and Liberty Mutual had agreed to extend the benefits and coverage as an insured to any member of the church who was the operator of an automobile not owned by the church while being used for its benefit is not only against the great weight and clear preponderance of the evidence but also unsustained by any credible evidence.

It is also argued Peters was an agent of the church and the finding of the trial court to the contrary is against the great weight and clear preponderance of the evidence. The argument proceeds on the theory that Peters was an agent as a matter of law since he volunteered to take the plaintiff

Baruxis home from choir practice and thus was affording a benefit to the church and providing a service which the church would otherwise have been obligated to undertake.

Unless the finding of the court is against the great weight and clear preponderance of the evidence, it will not be disturbed. As we read the record, a few years before the accident the church was concerned about the safety of its minor choir members and established the practice through Mr. Georges of undertaking to arrange rides home for those minor members who had not made other arrangements. We do not find in the record any intention or policy of the church that rides arranged by members of the choir among themselves or for themselves would constitute the driver of the car an agent of the church. The plaintiff Miss Baruxis did not ask Mr. Georges or Miss Maris to arrange transportation for her after choir practice. She expected her friend Miss Bakiras to call her father and to ride home the way she came. No one was designated by Mr. Georges to give the plaintiff Baruxis a ride. The finding that Peters was not an agent of the church is not against the great weight and clear preponderance of the evidence and must stand.

The contention is made the instructions on agency to the jury were in such form as to mislead it. The trial court instructed an agency was generally founded upon compensation but it also instructed an agency may be gratuitous. The latter instruction was correct. *Cochran v. Allyn* (1962), 16 Wis. (2d) 20, 113 N. W. (2d) 538; *Heims v. Hanke* (1958), 5 Wis. (2d) 465, 93 N. W. (2d) 455; *Georgeson v. Nielsen* (1934), 214 Wis. 191, 252 N. W. 576; Restatement, 1 Agency (2d), p. 7, sec. 1. However, whether the jury was misled is immaterial because the verdict was advisory and drops out of the case when the court makes its findings.

Since Peters was not an agent, he is not a hazard within the meaning of Class 1 persons of the schedule. We have found no basis in the testimony to qualify him as a person coming under Class 2 employees in the schedules. He was not an officer or an employee of the church nor one of the 10 undefined officers of the five church groups. Regardless of the policy, at the time of the accident he stood in no legal relationship to the church in which his alleged negligence could be imputed.

*By the Court.*—The judgment is reversed, with directions to dismiss the complaint and cross complaints in both actions against the Milwaukee Hellenic Community and the Liberty Mutual Insurance Company.