Rickie L. HOLM, Appellant,

v.

MUTUAL SERVICE CASUALTY INSURANCE COMPANY, and/or Mutual Service Life Insurance Company, and/or Modern Service Life Insurance Company, Respondent.

No. 47333.

Supreme Court of Minnesota.

Dec. 23, 1977.

Charles W. Anderson, Minneapolis, for appellant.

Lommen & Cole and Mark N. Stageberg, Minneapolis, for respondent.

Heard before SHERAN, C. J., and PETERSON and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

Rickie L. Holm brought a civil suit against Ernest Converse for injuries he received while being placed under arrest by Converse, a policeman for the then village, now city, of Princeton. Converse died leaving no estate before the judgment in favor of Holm was entered, and Holm obtained from the representative of Converse's estate an assignment of the right to proceed against Mutual Service Casualty Insurance Company (Mutual), which was the insurer for the village of Princeton. Holm's subsequent action against Mutual was decided in favor of the insurance company. The trial court determined that the insurance policies in question afforded no individual coverage to Converse. We affirm.

Holm's injuries were received in September 1969 and the notice of claim required by Minn.St. 466.05, subd. 1, was timely filed against the village of Princeton. However, no action was commenced against the village within the one-year limitation period provided in § 466.05, subd. 1. The question of the village's vicarious liability for the actions of Converse under the doctrine of respondeat superior is thus not before us on this appeal.

At the time of the incident, Mutual provided general liability and automobile liability coverage to the village of Princeton.[1] The policy was written on a form normally

1. Exhibits in the district court file indicate that in 1972 the city's general liability policy carried an endorsement which purported to include all city employees as "persons insured" under the policy. However, this endorsement does not appear on the policy which was in effect during 1969.

used for private corporations. The named insured was the village of Princeton. Other "persons insured" included "any executive officer" of the named insured. The automobile coverage extended to injuries caused by and arising out of the use, including loading and unloading, of any village vehicle. Each coverage applied only if any injury was caused by an "occurrence" as defined in the policy. The trial court found there was no coverage under either policy.

The issues on appeal are:

(1) Was Officer Converse an "executive officer" of the village of Princeton within the meaning of the insurance policy?

(2) Did Holm's injuries arise out of the "use" of the Princeton police car for which coverage was provided under the automobile policy?

(3) Did the infliction of bodily injury upon Holm by Officer Converse constitute an "occurrence" as that term is defined in the insurance policy?

■ 1. The general liability policy issued by Mutual to the village of Princeton was a standard form policy, which was obviously written contemplating primary application to a private rather than a municipal corporation. Coverage under the policy expressly included not only the named insured (here the village of Princeton), but also "any executive officer, director or stockholder thereof while acting within the scope of his duties as such." It is plain that municipal corporations do not generally have executive officers, directors, and stockholders. Thus, the quoted clause is patently ambiguous, requiring this court to consider extrinsic evidence in order to determine the correct application of the policy. 1 Couch, Insurance (2d) §§ 15.57, 15.58.

2. Appellant Holm does not suggest that Officer Converse was either a "director" or "stockholder" of the village within the terms of the above-quoted policy language. He argues only that Converse was an "executive officer" of the village. Our inquiry, therefore, focuses on that term.

Other courts have had occasion to construe the term "executive officer" in the context of insurance policies covering *private* corporations, and we think the results they have reached are instructive by analogy. For example, in *Bruce v. Travelers Insurance Co.*, 266 F.2d 781 (5 Cir. 1959), an oil worker was allegedly injured as a result of the negligence of a Gulf Refining Company drilling foreman. Relief was sought against Gulf's liability insurance carrier on the theory that the drilling foreman was an "executive officer" of Gulf within the terms of the applicable insurance policy. Judge Wisdom's opinion rejected plaintiff's contention, stating (266 F.2d 784):

"No court in this part of the world can ignore the common knowledge that a large oil company * * * has hundreds of employees and representatives in positions of great responsibility. But tool pushers, ramrods, supervisors, drilling superintendents, area superintendents, or other employees having responsible duties are not officers, under the unambiguous by-laws of Gulf Refining Company. Nor can it be said a tool pusher or a ramrod or a supervisor at a well location functions in an executive capacity, as 'executive officer' is understood in the ordinary acceptance of the term. *The term implies some sort of managerial responsibility for the affairs of the corporation generally and it imports a close connection with the board of directors and high officers of the company.*" (Italics supplied.)

The rationale of the *Bruce* decision finds continued vitality in more recent opinions. In *Lemmons v. Zurich Insurance Co.*, 403 F.2d 512 (5 Cir. 1968), it was held that neither a project superintendent nor a pipeline foreman was an "executive officer" under the insurance coverage of a pipeline construction company. The court based its holding on the fact that (1) neither of the employees in question held any of the corporate "offices" enumerated in the company's charter and bylaws, and (2) despite their rather broad supervisory authority, the superintendent and foreman did not bear the requisite managerial responsibility outline in *Bruce v. Travelers Insurance Co. supra.* Similarly, in *United States Fidelity*

& Guaranty Co. v. Warhurst, 336 F.Supp. 1190 (N.D.Ala.1971), it was held that a department foreman of a stove manufacturing firm was not an executive officer under the firm's liability insurance policy.[2]

In each of these cases, "executive officer" status in a private corporation turned on both the nature of the responsibility assumed by an individual and his formal designation as a company officer, either in the documents of incorporation or by someone authorized to create official positions. We believe that by identifying persons with similar responsibilities in municipal corporations, reasonable content can be given to the term "executive officer" as it applies to municipal corporations. Reasoning by analogy, then, a general definition might be framed as follows:

■ For the purpose of ascertaining the scope of coverage provided by a general liability policy covering a municipality, the executive officers of the municipal corporation are those persons whose position, power, and duties are established in the municipal charter and who are responsible for high-level governmental policymaking. Although somewhat broadly drawn, this definition would generally include a city's mayor or manager, councilmen, administrative board members, and department heads, while excluding employees whose duties are largely ministerial.[3]

■ Considering the facts of the present case in light of this definition, we are convinced that Officer Converse was never an executive officer of the village of Princeton. While it is true that police officers do exercise quite substantial discretion in the course of their daily law enforcement activities, the decision-making responsibilities incumbent upon them are not of the character contemplated by the definition of "executive officer." That is, policemen's discretionary actions are not managerial or policy oriented, and are generally only short term in nature. Accordingly, we hold that Officer Converse was not an executive officer within the terms of the village's general liability policy. See, Petzak v. Graves, 33 Wis.2d 175, 147 N.W.2d 294 (1967); but cf. Bouis v. Employers Liability Assurance Corp., 160 So.2d 36 (La.App.1964). See, also, State v. Gardner, 88 Minn. 130, 92 N.W. 529 (1902).

Holm suggests that we merely accept the term "executive officer" at face value. Under this reasoning, because Converse was an officer and a member of the executive branch of government, it would follow that he was an "executive officer." There is some support for this position. See, Bouis v. Employers Liability Assurance Corp. supra; State v. Gardner, supra. However, we decline to accept such a simplistic view of the term. To do so would be to take the term "executive officer" out of context and attribute to it a meaning not contemplated by the contracting parties.

3. Appellant also relies on Ohio Farmers Insurance Co. v. Landfried, 348 F.Supp. 486 (W.D.Pa.1972), for the proposition that as a policeman Converse was covered by the liability policy whether or not he falls within the definition of "executive officer." In Landfried, a standard form policy nearly identical to the one in question here had been issued to a municipality. The court

---

2. Accord: Thibodeaux v. Parks Equipment Co., 185 So.2d 323 (La.App.1965); Employers' Liability Assurance Corp. v. Upham, 150 So.2d 595 (La.App.1963). See, Guillory v. Aetna Insurance Co., 415 F.2d 650 (5 Cir. 1969). See, also, Gruber Personnel Services, Inc. v. Indemnity Insurance Co. of North America, 212 Pa.Super. 120, 239 A.2d 880 (1968); Transport Insurance Co. v. Manufacturers Casualty Insurance Co., 226 F.Supp. 251 (E.D.Ark.1964); Curran v. Security Insurance Co., 195 F.Supp. 562 (W.D. Ark.1961). Cf. United States Fire Insurance Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970).

3. This definition tends to correspond to the traditional officer-employee distinction made in the law of municipal corporations. That distinction, however, should be used for guidance only, since the case law in the area is confused and the decisions are generally more responsive to considerations of policy rather than precedent. In any event, the distinction should not be adopted wholesale as a litmus test for identifying "executive officers." See, generally, 2A Antieau, Municipal Corporation Law, §§ 22.00 to 22.02, and 3 McQuillin, Municipal Corporations (3 ed.) §§ 12.30, 12.31.

held that a city policeman was individually covered by the policy on the theory that a hazard rating schedule appended to the policy indicated that a specific premium charge for police activities had been included in the total cost of the policy. The court said (348 F.Supp. 490):

"In view of the question of the applicability of the form language to a municipality and the fact that a separate premium was charged for activities relating to 'policeman', we think it a fair construction of the contract and the intention of the parties that [the police officer] was also covered."

We decline to follow the reasoning of the *Landfried* decision because we believe it misconstrues the nature and purpose of a hazard rating schedule. In brief, a hazard schedule is nothing more than a list of the potentially liability-producing activities for which coverage is provided to the named insured. An assessment of the number and character of such activities aids the insurance company in establishing the proper total premium charge. Clearly, however, the hazard schedule does not expand the category of persons insured; such persons are specifically designated in a different section of the policy. Instead, a hazard schedule merely lists the risks *against which the persons insured are protected*, and also sets forth the premium charge associated with each such risk. Our position on this issue finds strong support in other jurisdictions.[4] In particular, see, *Galvan v. Peters*, 22 Wis.2d 598, 126 N.W.2d 590 (1964).

We conclude that no individual coverage was afforded Officer Converse under the general liability policy.

4. As noted above, the injuries giving rise to this action were inflicted by Officer Converse in the course of placing appellant under arrest. Prior to the actual arrest, Converse had pursued Holm for some distance in a Princeton police car. Holm was operating a motorcycle which was rammed from behind several times by the police car. The motorcycle did not tip, however, and in an effort to escape, Holm drove up a steep hill and dismounted. At that moment, the police car came over the top of the hill and stopped. Converse left the squad car in order to apprehend Holm, and the incident giving rise to Holm's injuries followed.

Under the automobile liability section of the village's insurance policy, Mutual obligated itself to pay on behalf of the village any damages for bodily injuries "arising out of the ownership, maintenance, or use" of a village vehicle by an employee of the village. As his second basis for recovery, Holm argues that his *personal* injuries arose out of Converse's "use" of the Princeton police car.[5]

The phrase "arising out of the * * * use" has been the subject of virtually endless interpretation by appellate courts. Recently, we, too, have had occasion to consider this language. See, *Engeldinger v. State Auto. & Cas. Underwriters*, 306 Minn. 202, 236 N.W.2d 596 (1975); *Associated Ind. Dealers v. Mutual Serv. Ins.*, 304 Minn. 179, 229 N.W.2d 516 (1975). In the *Associated Dealers* case, we observed that in order for coverage to exist under such policy language, there must be at a minimum some causal relationship between the use of a vehicle and the injury for which coverage is sought. We stated (304 Minn. 181, 229 N.W.2d 518):

"* * * In general terms, it has been established that such relationship need not be a proximate cause in the strict legal sense. Rather, it is sufficient to establish that the injury or loss 'was a

4. See, *MacLellan v. Liberty Mutual Ins. Co.*, 346 Mass. 415, 193 N.E.2d 577 (1963); *Linenschmidt v. Continental Casualty Co.*, 356 Mo. 914, 204 S.W.2d 295 (1947); *Webster v. Inland Supply Co.*, 287 Ill.App. 567, 5 N.E.2d 849 (1936). Cf. *Le Blanc v. New Amsterdam Casualty Co.*, 8 So.2d 83 (La.App.1942), affirmed, 202 La. 857, 13 So.2d 245 (1943).

5. It is apparently undisputed that the damage caused to Holm's motorcycle by the rammings arose "out of the use" of the insured vehicle. The amount of that damage was relatively small—less than $100. In any case, only the application of the policy language to Holm's bodily injuries is at issue here.

natural and reasonable incident or consequence of the use of the [insured] vehicle.' It has been said that the causal connection must be 'reasonably apparent,' and that '*the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy.*' * * * In any event, each case presenting such a question must, to a great degree, turn on the particular facts presented." (Italics supplied.) See, 12 Couch, Insurance (2d) §§ 45.56, 45.-57.

The facts of the *Associated Dealers* case are also instructive. There, the negligent use of an acetylene torch caused a fire which destroyed a warehouse. For convenience, the tanks containing the torch fuel had been left in a van and were connected to the torch by long hoses. Suit was ultimately brought against the insurance company which carried the automobile liability policy on the van on the theory that the fire had arisen "out of the use" of the van. This court found that "the requisite causal link between the alleged 'use' of the insured vehicle and the fire" was not present, and therefore denied recovery under the policy. 304 Minn. 182, 229 N.W.2d 518.

■ In the instant case, it would seem that the *physical* injuries Converse inflicted upon Holm were equally unrelated to the "use" of the police vehicle. Converse had completely left the vehicle before he administered the tortious battery. The police car had served only to transport him to the scene of the incident. The battery could as easily have occurred had Converse come upon the stationary motorcycle while on foot.

This reasoning is supported by several cases from other jurisdictions, each of which involved an intentional tort committed away from the subject vehicle and after it had come to a halt. In *Commercial Union Insurance Co. of New York v. Hall*, 246 F.Supp. 64 (E.D.S.C.1965), one driver used his vehicle to block the path of another driver, got out of his vehicle, and battered the other driver. The court held that the injuries sustained by the latter did not arise out of the "use" of the tortfeasor's automobile.

Similarly, in *Kangas v. Aetna Casualty & Sur. Co.*, 64 Mich.App. 1, 235 N.W.2d 42 (1975), a Michigan appellate court held that the injuries resulting from an assault and battery committed by the passengers of an automobile upon a pedestrian did not arise out of the "use" of the vehicle under the vehicle owner's insurance policy. In that case also the battery occurred outside of the subject vehicle and after it had ceased to be used for transportation. And in *National Mut. Cas. Co. v. Clark*, 193 Miss. 27, 7 So.2d 800 (1942), a taxi driver, apparently disgruntled over the size of the tip received from a passenger, assaulted and injured the passenger as he walked away from the cab. There too it was held that the tortious act did not arise out of the "use" of the automobile.

■ In each of these decisions the acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the "use" of the vehicle and the injuries inflicted. And this was so in spite of the fact that in each instance the subject auto was used to transport the tortfeasor(s) to the scene of the incident. Read together, the cases fully support the general proposition that for an injury to "arise out of the use" of an automobile, it must be causally related to the employment of the vehicle for transportation purposes. In the words of the *National Mutual* court, "the vehicle itself must be an *active* accessory" to the injury sustained. (Italics supplied.) *National Mut. Cas. Co. v. Clark*, 193 Miss. 40, 7 So.2d 805.

The facts of the instant case fall squarely within this analysis. Officer Converse used the police car only as a means of transportation to the scene of the arrest and battery. Thereafter, Converse was physically separated from the vehicle, and no part or instrumentality of the vehicle ever came into contact with Holm. Moreover, on the facts of this case, we believe this conclusion

to be in accord with the plainest meaning of the phrase "arising out of the use." In no meaningful sense did Holm's personal injuries result from the use of the Princeton police vehicle. The district court correctly held that Holm's injuries were not within the coverage of the automobile policy.

Having determined that there was no coverage under the village's liability insurance for the injuries in question, we need not consider whether those injuries were "caused by an occurrence" as that phrase is defined in the policy.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.