INSURANCE COMPANY OF NORTH AMERICA, PLAINTIFF-APPELLANT, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY, A CORPORATION, BARBARA IRIS NICKEL, AN INFANT BY HER GUARDIAN *AD LITEM*, ANN NICKEL AND ANN NICKEL, INDIVIDUALLY, JOSEPH DURAN, MARY DURAN, DAVID DURAN, ROBERT J. STENSON AND THE REFORMATION LUTHERAN CHURCH OF ABSECON, DEFENDANTS-RESPONDENTS, AND CHARLES FIEDLER, MIRIAM FIEDLER AND MARTIN FIEDLER, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 13, 1978—Decided September 13, 1978.

Before Judges Fritz, Botter and Ard.

Mr. *John P. Morris* argued the cause for appellant (*Messrs Horuvitz, Perlow, Ritter* and *Morris*, attorneys).

Mr. *Charles Gemmel* argued the cause for respondents Barbara Iris Nickel, an infant by her guardian *ad litem*, Ann Nickel, and Ann Nickel (*Messrs. Gibson, Previli & Todd*, attorneys).

*Mr. Michael R. Connor* argued the cause for respondent Government Employees Insurance Company (*Messrs. Lloyd, Megargee, Steedle & Connor,* attorneys).[1]

A statement in lieu of brief was filed by *Messrs. Hankins & D'Amato,* attorneys for respondents Joseph Duran, Mary Duran and David Duran.

A statement in lieu of brief was filed by *Mr. Emanuel L. Levin,* attorney for respondents Charles Fiedler, Miriam Fiedler and Martin Fiedler.[2]

A statement in lieu of brief was filed by *Messrs. Kiefer, Bollermann & Kaplowitz,* attorneys for The Reformation Lutheran Church of Absecon.

The opinion of the court was delivered by

BOTTER, J. A. D. Plaintiff Insurance Company of North America (INA) appeals from an adverse determination on cross-motions for summary judgment.[3] The essential issue

---

[1]Respondent Government Employees Insurance Company (GEICO) as insurer of defendant Robert J. Stenson, sought to protect his interest on this appeal by opposing plaintiff's denial of insurance coverage.

[2]The Fiedlers were not named as defendants in the complaint because their separate action against defendant Stenson had not been commenced at the time appellant's declaratory action was brought. However, counsel for the Fiedlers participated in the proceedings below and has asserted their position on this appeal, although it appears that no formal order of intervention or joinder of the Fiedlers as parties has been entered.

[3]INA's motion was for partial summary judgment. However, at oral argument counsel for INA stipulated that disposition of the issues raised on this appeal will terminate the declaratory judgment action and no further relief will be sought below. This stipulation makes it unnecessary for us to deal with this appeal as one taken from an interlocutory order without leave of court having been sought. *R.* 2:2-4; see *Florio v. Galanakis,* 107 *N. J. Super.* 1 (App. Div. 1969).

on this appeal is whether INA's insurance policy issued to The Reformation Lutheran Church of Absecon (the church)[4] affording employer's nonownership liability coverage insures Robert Stenson against judgments that may be recovered against him in negligence actions brought by the Nickels, the Durans and the Fiedlers.

In January 1974 the church sponsored an outing for a youth group. Robert Stenson, a member of the church and the youth group, volunteered the use of his pick-up truck in transporting people who were attending the outing. During the outing, while Stenson was transporting some people from the picnic area, his vehicle was involved in an accident and his passengers were injured. Separate negligence actions were commenced against Stenson and the church, and these were consolidated. GEICO insured the Stenson vehicle and has paid its policy limits to injured claimants pursuant to an order entered in the underlying consolidated negligence action, in satisfaction of its obligation under its policy.[5] This declaratory judgment action was brought to determine whether INA affords Stenson additional coverage that may be available to satisfy the unmet portion of the injured parties' claims.

The Church owned no motor vehicles. It secured an automobile insurance policy which listed no automobiles, but in the place provided for the description of automobiles the policy stated: "As per employer's non-ownership endorsement attached." The kind of protection afforded by INA's policy in this case depends primarily on the terms of paragraph 2 of

---

[4]The church's correct name appears to be The Evangelical Lutheran Church of the Reformation of Absecon, N. J. The church is no longer an interested party in this appeal since judgment in its favor has been entered in the underlying negligence actions, apparently based upon immunity afforded by N. J. S. A. 2A:53A-7.

[5]It appears likely that the damages will exceed GEICO's policy limits, and the action against Stenson has continued, with GEICO acknowledging its obligation to defend Stenson.

the nonownership liability endorsement.[6] That endorsement provides in part:

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to non-owned automobiles, subject to the following provisions:

1. Definitions. The words "non-owned automobile" shall mean a land motor vehicle, trailer or semitrailer not owned by, registered in the name of, hired by or loaned to the named insured. The word "automobile" wherever used in the policy, with respect to the insurance afforded under this endorsement, shall include "non-owned automobile."

2. Application of Insurance.
   (a) The insurance applies only to (1) the named insured, and (2) any executive officer of the named insured, as insured, except as stated in subsections (1) and (2) of division (a) of the definition of Insured agreement of the policy and except with respect to any automobile owned by such officer or by a member of the same household.
   (b) The insurance applies only to the use, by any person other than the named insured, of any non-owned private passenger automobile in the business of the named insured as stated in the declarations, and to the use in such business, by any employee of the named insured, of any non-owned automobile of the commercial type if such use of such automobile is occasional and infrequent.

3. Exclusions.
   (a) * * *
   (b) The insurance does not apply to any automobile owned by or registered in the name of a partner, if the named insured is a partnership.

4. Other Insurance. This insurance shall be excess insurance over any other valid and collectible insurance for Bodily Injury Liability and for Property Damage Liability.

\*    \*    \*    \*    \*    \*    \*    \*

In construing the coverage afforded by this endorsement the trial judge focused entirely on par. 2(b) above. In his

---

[6]The endorsement provided protection against liability for bodily injury (Coverage A) with limits of $100,000/$300,000 at an annual premium of $17, and liability for property damage (Coverage B) with a limit of $100,000 at an annual premium of $6.

written opinion he dismissed par. 2(a) from consideration, saying that "2(a) is obviously inapplicable since Stenson was obviously neither the named insured or an executive officer thereof." The trial judge went on to consider whether Stenson's pick-up truck was a nonowned "private passenger automobile" used in the business of the named insured within the meaning of par. 2(b). He noted that par. 2(b) includes the use of a nonowned "private passenger automobile" driven by anyone (other than the named insured), although it limits coverage for liability arising from the use of a nonowned commercial type automobile to infrequent use by an employee of the named insured. Holding on the facts in this case that Stenson's pick-up truck was a "private passenger automobile" used for pleasure, within the meaning of INA's policy and its endorsement, the trial judge held that INA "owes coverage to Stenson."

The trial judge assumed that if the *use* of the nonowned motor vehicle satisfied the requirements of par. 2(b), the driver of that vehicle would be insured by the INA policy and its endorsement. He did not answer INA's contention that the endorsement affords coverage *only to the designated insureds,* the church and its executive officers, whether or not Stenson's pick-up truck as used at the church's outing constituted a "passenger automobile" within the contemplation of par. 2(b).

We agree with appellant's contention that Stenson obtained no coverage under INA's policy since he was not an insured within the meaning of the endorsement. It makes no difference what kind of vehicle Stenson was driving at the time of the accident.

We start with the premise that the plain purpose of a clause defining who is an insured — a person insured — would seem to be to identify those persons who are insured by the policy. Here, par. 2(a) of the "Employers' Non-Ownership Liability Blanket Coverage" endorsement clearly specifies that only the church and any executive officer of the church are insureds. Respondents concede that Stenson is

not such a named insured. Thus, the plain meaning of the term "insured" excludes Stenson as a person whose liability for bodily injury or property damage is insured by the INA policy. See *Flynn v. Hartford Fire Ins. Co.*, 146 *N. J. Super.* 484, 488–489 (App. Div.), certif. den., 75 *N. J.* 5 (1977), holding that a liability policy which listed the Borough of Englewood Cliffs as the only named insured did not insure individual policemen against liability even though the description of hazards included "Policemen." Cases in other states interpreting the scope of coverage under nonownership automobile liability endorsements have limited coverage to those persons within the endorsement's definition of an insured. *Webster v. Inland Supply Co.*, 287 *Ill. App.* 567, 574–575, 5 *N. E.* 2d 849, 853–854 (App. Ct. 1936); *MacLellan v. Liberty Mut. Ins. Co.*, 346 *Mass.* 415, 417, 193 *N. E.* 2d 577, 578 (Sup. Jud. Ct. 1963); *Galvan v. Peters*, 22 *Wis.* 2d 598, 601, 126 *N. W.* 2d 590, 593–594 (Sup. Ct. 1964).

Although an executive officer is an insured under the endorsement, par. 2(a) excludes coverage of an executive officer's own automobile or one owned by a member of his household. It would be strange to find that Stenson is an insured under the policy when a specified insured, an executive officer, is excluded from coverage because he used a nonowned vehicle which was owned by a member of his household. Similarly, par. 3(b) excludes coverage of a vehicle owned by a partner whose partnership is the named insured. These provisions emphasize the narrowness of the class of persons insured under the endorsement, namely, the church and its executive officers, and even then, with exceptions as to such officers.

Having identified the class of insured in par. 2(a), the endorsement then delimits in par. 2(b) the activities — hazards or risks — giving rise to the insureds' liability for which coverage is afforded. Par. 2(b) states that the insurance applies only to particular *uses* of nonowned automobiles. It says that the insurance applies "only to the use" by persons other than the insured of a nonowned ve-

hicle in the business of the insured. It does not say that all persons using such nonowned vehicles in particular ways become additional insureds under the policy. Thus, the purpose of par. 2(a) is to define the persons *insured* by the endorsement, and the purpose of par. 2(b) is to delimit the activities for which coverage is afforded to such insureds.

Nonownership motor vehicle coverage insures an employer and its executive officers against liability imputed to them by reason of the negligence of employees and other persons using vehicles not owned by the insured on the business of the insured. It affords protection against liability incurred under principles of *respondeat superior. Legendre v. Hill*, 262 *La.* 249, 263 *So.* 2d 25 (Sup. Ct. 1972), aff'g 250 *So.* 2d 127 (La. App. 1971) ; *MacLellan v. Liberty Mutual Ins. Co., supra; Linenschmidt v. Continental Cas. Co.*, 356 *Mo.* 914, 922, 204 *S. W.* 2d 295, 300 (Sup. Ct. 1947) ; *Galvan v. Peters, supra.*

*Legendre v. Hill, supra,* involved an endorsement which is virtually identical to the one below us. The Louisiana Supreme Court held that employees of the named insured, who were not executive officers, were not additional insureds under the endorsement. The court explained that the Employer's Non-Ownership Liability Endorsement was obtained to insure the employer against liability under the doctrine of *respondent superior* for injury caused by tortious conduct of employees using their own vehicles for their employer's business. An employer's basic motor vehicle policy afforded coverage only for vehicles specifically listed in the policy, and not for nonowned, unlisted vehicles. 262 *La.* at 255, 263 *So.* 2d at 27. The basic motor vehicle policy would normally afford coverage to an insured employer, as defined therein, for liability arising out of the negligence of the insured while driving owned vehicles, and for liability arising out of the use, with permission, of a vehicle owned by the insured and listed in the policy. It would not cover persons who are not insureds and who drive vehicles not owned by the employer on the employer's business. A non-

ownership policy seeks to close this gap in insurance coverage of the employer.

So here. While the church had no automobiles insured under a basic motor vehicle liability policy, it bought protection against imputed liability arising out of the use by others of nonowned vehicles on the church's business. The operators of such nonowned vehicles were likely to be covered by a direct, primary insurance policy. The church needed to protect itself and its executive officers for liability *they* might incur in excess of the coverage afforded by the policy on the nonowned vehicle. The scope of this coverage is limited, but that does not mean that injured members of the public will not be fairly protected. Injured parties may have little difficulty in holding the insured employer liable for the negligence of employees who use vehicles not owned by the employer on the employer's business. A principal and agent or master and servant are jointly and severally liable. *Moss v. Jones,* 93 *N. J. Super.* 179, 184 (App. Div. 1966). Thus, in most cases it will not be significant that the employee is not termed an additional insured under the non-ownership endorsement.

The case before us, however, is a rare case. As a charitable entity immune from liability pursuant to *N. J. S. A.* 2A:53A–7 no judgment can be obtained against the church. But the statute by its terms does not extend immunity to the agents or servants of the church for their negligent acts. Thus, an employee using his own vehicle on the church's business will be liable for his tortious conduct without that liability being imputed to the church. The result is that the coverage under the nonownership endorsement here is effectively limited to coverage for an executive officer who is using a vehicle not owned by the church, himself or a member of his household and for liability arising out of the use by others of a nonowned vehicle which may be imputed to that executive officer.

While the scope of coverage afforded by a nonownership endorsement has not been previously decided in this State, our

holding conforms with the prevailing law in other juris-
dictions. *Webster v. Inland Supply Co.; MacLellan v. Liberty
Mut. Ins. Co.; Linenschmidt v. Continental Cas. Co.* and
*Galvan v. Peters,* all *supra;* and see *Chicken Delight of Cal.
v. State Farm Mut. Auto. Ins. Co.,* 35 *Cal App.* 3d 841, 111
*Cal. Rptr.* 79 (D. Ct. App. 1973) ; *cf. Fidelity and Cas. Co.
of N. Y. v. Carpenter,* 234 *F.* 2d 528, 532–533 (5 Cir. 1956).

Against this authority respondents' principal reliance is
upon canons of construction of insurance policies. Respon-
dents contend that the meaning of the endorsement is unclear
and that ambiguities should be resolved against the insurance
company, citing *Bryan Constr. Co., Inc. v. Employer's
Surplus Lines Ins. Co.,* 60 *N. J.* 375, 377 (1972), *National
Union Fire Ins. Co. v. Falciani,* 87 *N. J. Super.* 157, 167
(App. Div. 1965), and similar cases.

It is difficult to say that this endorsement is a model of
clarity. Nevertheless, we are obliged to give effect to the
true intent and purpose of the policy as we have explained
it.

Accordingly, we reverse and vacate the order of judgment
entered below and enter judgment in favor of plaintiff
declaring that its insurance policy does not afford coverage
to Stenson. We need not consider appellant's Point III,
which raises an issue not decided below, and we do not
remand the case for consideration of other relief demanded
by the complaint in view of the stipulation mentioned in
note 3 above.