845 F.2d 245
 Sandra GILBERTSON, Appellant,
v.
STATE FARM MUTUAL AUTO INS., Appellees.
Carol Jean GILBERTSON, Appellant,
v.
STATE FARM MUTUAL AUTO INS., Appellees.
Alvin GILBERTSON, Appellant,
v.
STATE FARM MUTUAL AUTO INS., Appellees.
 Nos. 85-2776 to 85-2778.
 United States Court of Appeals,
Tenth Circuit.
 April 26, 1988.
 
 1
 Karen E. Faulk (Ed Abel with her on the brief) of Abel, Sokolosky & Clark, Oklahoma City, Okl., for plaintiffs/appellants.
 
 
 2
 Brian M. Dell of Speck & Dell, Oklahoma City, Okl., for defendant/appellee State Farm.
 
 
 3
 Before SEYMOUR and MOORE, Circuit Judges, and ALDON J. ANDERSON,* District Judge.
 
 
 4
 ALDON J. ANDERSON, District Judge.
 
 
 5
 The District Court below granted summary judgment to defendant State Farm Mutual Automobile Insurance Company, holding that the plaintiffs' auto accident was beyond the coverage of the uninsured motorist clause in plaintiffs' policy because it did not arise out of the operation, maintenance or use of the uninsured vehicle. Plaintiffs appeal.
 
 
 6
 The facts of the case are as follows: In late afternoon of December 22, 1982, defendant Steven York borrowed a car belonging to his girlfriend Deloris Marion. (Deposition of Steven York, pp. 8, 12, 40.) Over the next several hours York used her car to run some errands and to drive alone around town. (York deposition, p. 38.) During the early evening, he drank about twelve cans of beer. (York deposition, p. 10.)
 
 
 7
 Shortly before 10:00 p.m., York drove Marion's car onto the Prairie Grove Road overpass just south of Guthrie, Oklahoma. On prior occasions, York and some of his friends had dropped rocks from this overpass onto eighteen-wheel trucks traveling on Interstate 35 below. (York deposition, pp. 12, 32, 42.) About four minutes before 10:00 on this evening, York was balancing a 51-pound rock on the ledge of the overpass when it slipped and fell on a pick-up truck occupied by plaintiff Alvin Gilbertson, his daughter, plaintiff Sandra Gilbertson, and his wife, Carol Jean Gilbertson. All three were seated in the front seat of the pickup. Carol Jean Gilbertson was killed and Alvin and Sandra Gilbertson suffered serious injuries. It is not clear whether York carried the rock onto the overpass from a spot nearby or transported it to the overpass after finding it elsewhere. (York deposition, pp. 24, 25, 34, 35, 40.) Due to his intoxicated state that evening, York does not remember where he found the rock.
 
 
 8
 Plaintiffs seek compensation under their insurance policy on grounds that the accident arose out of the operation, maintenance and use of Marion's uninsured vehicle, as these terms are used in the uninsured motorist clause of plaintiffs' policy.[1]
 
 
 9
 On an appeal from a ruling on a Rule 56 Summary Judgment motion, the court's role is essentially that of de novo review. The court is to make sure that there exists no genuine issue of fact and that the movant is entitled to judgment as a matter of law.[2] Interpretation of contractual clauses is a matter of law. The issue on appeal is whether the accident which resulted in plaintiffs' injuries arose as a matter of law out of the operation, maintenance or use of Marion's car.[3] Since the court finds that the accident did not arise out of the operation, maintenance or use of Marion's car, even when the facts are viewed in the light most favorable to plaintiffs, it holds that defendant State Farm is entitled to a judgment as a matter of law and the District Court's entry of summary judgment was proper.
 
 
 10
 Plaintiffs claim that the following actions by defendant York demonstrate that the accident arose out of the operation and use of Marion's car: York's driving the car to the vicinity of the overpass, his using the car to locate a rock, and his then using the car to transport both himself and the rock to the place on the overpass from which he dropped the rock.
 
 
 11
 Minnesota courts have frequently struggled with the definition of "arising out of the operation and use" of a vehicle. While each case must be decided on its own peculiar facts, a number of rules have emerged.[4] They fall into two fairly distinct sets. The first is the use to which the car was put around the time the accident occurred. The accident must have arisen out of the use of the vehicle as a vehicle. Fire and Casualty Insurance Co. of Connecticut v. Illinois Farmers Insurance Co., 352 N.W.2d 798 (Minn.Ct.App.1984). The use of the vehicle must have been for transportation purposes. Haagenson v. National Farmers Union Property and Casualty Co., 277 N.W.2d 648, 652 (Minn.1979). The car must have been more than the mere situs of the injury. Tlougan v. Auto-Owners Insurance Co., 310 N.W.2d 116 (Minn.1981). And the vehicle must have been an active accessory to the accident. Holm v. Mutual Service Casualty Insurance Co., 261 N.W.2d 598 (Minn.1977).
 
 
 12
 The second set of rules the courts have developed relates to the requisite causal connection between the vehicle and the injury sustained. It is well-established that a causal relationship or connection must exist. Haagenson, 277 N.W.2d at 652. The use of the vehicle need not be the proximate cause of the accident. Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies, 229 N.W.2d 516, 518 (Minn.1975). The necessary causal relationship may exist as long as the accident would not have happened "but for" the use of the vehicle. Waseca Mutual Insurance Co. v. Noska, 331 N.W.2d 917, 920 (Minn.1983). On the other hand, the mere fact that the use of the vehicle preceded the accident is insufficient to establish that the accident arose out of such use. Associated Independent Dealers, 229 N.W.2d at 518. The accident must have been a natural and reasonable incident or consequence of the use of the vehicle. Id. And the causal connection will be considered to have been severed by any intervening act of independent significance. Holm, 261 N.W.2d at 603.
 
 
 13
 In the present case, there is no question that the vehicle was used for transportation purposes inasmuch as it was involved in the accident. It is assumed for purposes of this appeal that the car transported both York and the rock to the overpass. The real question in this case is one of causation. The court feels that York's exiting the car, removing the rock from the car, carrying the rock to the ledge of the overpass, balancing it on the ledge and then allowing it to fall, taken together, constituted an act of independent significance which broke the causal link between the use of the car and the Gilbertsons' injuries. Neither the car's locomotion nor any of its mechanical functions was involved in either York's dropping the rock nor the rock's hitting the Gilbertson vehicle. York's dropping the rock was not a vehicular-related act such as would only likely occur in a motorized society. As the Minnesota Supreme Court said in Associated Independent Dealers, the accident must be a natural and reasonable incident or consequence of the use of the vehicle for transportation purposes. The mere fact that the use of the vehicle preceded the accident is not sufficient to establish the causal connection. 229 N.W.2d at 518. In the present case, Marion's car was nothing more than the vehicle which brought the offender and his weapon to the scene of the crime. There is hardly any activity in our society which is not preceded by the use of an automobile.
 
 
 14
 In Wieneke, 397 N.W.2d at 599, the court said that the accident must be actively connected with the use of the vehicle. In the present case, however, the car was parked and both York and the Gilbertsons were physically separated from it. The injury was caused by the rock falling from the overpass--not by any use of the vehicle.
 
 
 15
 In Holm, 261 N.W.2d at 598, the plaintiff suffered injuries at the hands of a police officer in the course of an arrest. Plaintiff claimed that his injuries arose out of the use of a police car under the municipality's insurance policy because the officer had chased him to the source of the arrest in a squad car. In rejecting the plaintiff's argument, the Minnesota Supreme Court said that the officer's leaving the car and then inflicting a battery on the plaintiff were acts of independent significance which broke the causal link between the use of the vehicle and the injuries inflicted.
 
 
 16
 Officer Converse used the police car only as a means of transportation to the scene of the arrest and battery. Thereafter, Converse was physically separated from the vehicle, and no part or instrumentality of the vehicle ever came into contact with Holm.
 
 
 17
 Id. at 603.
 
 
 18
 In Associated Independent Dealers, 229 N.W.2d at 516, a fire was started by the use of an acetylene torch. While the torch was being used, the oxygen tanks were kept in the van which had brought the equipment to the scene. The Minnesota Supreme Court said:
 
 
 19
 We hold that, under the facts of this case, the trial court could not find the requisite causal link between the alleged "use" of the insured vehicle and the fire. It is clear from the record that the fire was caused by the actual cutting of the rails or by improper maintenance of the warehouse. In any event, the fact that part of the acetylene cutting equipment was in the van when the fire began was a mere fortuity. The relationship between the use of the van and the ignition of the fire was causal at best, and in our view that link was not sufficient to bring the fire within the coverage afforded by defendant's policy. The scope of coverage afforded therein must end at some point, and such is the case in this litigation.
 
 
 20
 Id. at 518-19.
 
 
 21
 In Wieneke, 397 N.W.2d at 597, plaintiff and another motorist exchanged heated words at a stoplight after which the other motorist got out of his car and punched the plaintiff who was still seated in his own car. In rejecting the plaintiff's arguments that his injuries arose out of the use of the other motorist's car and were therefore covered by the insured motorist clause in his insurance policy, the court said:
 
 
 22
 Although the fistfight in this case may have been precipitated by the driving conduct of the two men, Wieneke's injuries were not actively connected to the maintenance or use of a motor vehicle. The injuries resulted from Beedle's punching him in the nose.
 
 
 23
 Id. at 599.
 
 
 24
 In Fire and Casualty Insurance, 352 N.W.2d at 798, the plaintiff was accidentally shot by his hunting partner who was loading his gun while partially in the car. The court found that the plaintiff was shot because his partner was in a hurry to start hunting--not because of any use of the vehicle as a vehicle--and rejected plaintiff's claim. It went on to say that "[the hunting partner's] loading of the gun with the barrel halfway in the car and pointed at Morehouse was extremely careless. Such acts are 'events of independent significance which [break] the causal link between the "use" of the vehicle and the injuries ... .' " Id. at 800 (quoting Holm v. Mutual Service Casualty Insurance Co., 261 N.W.2d 598, 603 (Minn.1977).
 
 
 25
 The court concludes, therefore, that the Gilbertsons' injuries did not arise out of the operation, maintenance and use of Marion's uninsured vehicle and that the District Court's grant of summary judgment to defendant was proper.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Honorable Aldon J. Anderson, Senior Judge, United States District Court, District of Utah, sitting by designation
 
 
 [1]
 The insurance policy, provided by the parties, states in the section on uninsured motor vehicle coverage: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle." State Farm Mutual Automobile Insurance Company, Policy Form 9823.3, Your State Farm Car Policy 13
 
 
 [2]
 All factual inferences are to be drawn in favor of the party opposed to the motion. In this case, it is not clear whether defendant York carried the rock onto the overpass from a spot nearby or drove it there from somewhere else. For the purposes of this review, therefore, the court assumes that York drove the rock onto the overpass and then removed it from Marion's car before setting it on the ledge
 
 
 [3]
 This court has diversity jurisdiction in this case and state law applies. The insurance policy at issue here was executed in Minnesota and all the plaintiffs are residents of Minnesota. Therefore, it is best to look to Minnesota law. Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir.1985) ("Because no place of performance is indicated, the law of the place where the policy was made must govern the interpretation of uninsured motorist benefits due appellants.")
 
 
 [4]
 At issue in this case is language from the Gilbertsons' State Farm insurance policy. Similar language appears in the Minnesota No Fault Automobile Insurance Act. Minnesota courts have held, however, that the "arising out of the operation and use of a vehicle" language is to be interpreted the same way in both situations. Jorgensen v. Auto-Owners Insurance, 360 N.W.2d 397 (Minn.Ct.App.1985); Wieneke v. Home Mutual Insurance Co., 397 N.W.2d 597 (Minn.Ct.App.1987)