Allen STUCKY, individually and as next friend for Tyler Wayne Stucky, a minor, Appellant,

v.

Marc Randall LONG, Defendant,

and

State Farm Mutual Automobile Insurance Company, Appellee.

No. 70184.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 14, 1989.

Edward F. Montgomery, and, Stephen M. Grayless, Tulsa, for appellant.

W. Michael Hill, Tulsa, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Tyler Wayne Stucky (Tyler) was seriously injured by Marc Randall Long (Long) (defendant below, but not party to this appeal). The amended petition alleged that Long, while driving a motor vehicle, willfully attempted to injure Tyler by attempting to run him off the road, and by attempting to crash his vehicle into Tyler's vehicle. It also alleged that Long's reckless and assaultive manner of driving continued approximately five miles. Tyler located a police officer, pulled his car adjacent to the police car, and got out of his automobile. Then Tyler alleged that Long got out of his car and severely beat Tyler with his fists and smashed Tyler's head into his automobile, causing severe and permanent injury. Tyler prayed for compensatory damages in the amount of $400,000.00 and punitive damages in the amount of $500,000.00. A default judgment was entered against Long on May 29, 1987. The validity of that judgment is not at issue in this appeal.

After the filing of the amended petition, State Farm was contacted and advised that Allen Stucky, on behalf of Tyler, intended to seek satisfaction of any judgment received against Long, to the extent the judgment is unsatisfied, from the uninsured motorist provisions of Allen's policy. The letter stated that Long injured Tyler and that Long did not have an effective liability insurance policy to provide coverage for Tyler's injuries.

State Farm was allowed to intervene and filed a motion for summary judgment. The motion alleged that uninsured motorist coverage was not applicable because: (1) Tyler's injuries were caused by *"intentional"* acts of Long and not by an *"accident"*; and, (2) Tyler's injuries did not arise "out of the operation, maintenance or use of a motor vehicle". Tyler filed a cross motion for summary judgment, alleging the existence of material issues of fact, and arguing, *inter alia*, that determination of whether an accident had occurred should be determined from the perspective of the

victim. The trial court granted State Farm's motion for summary judgment in its favor.

The issues in this appeal center around whether the injuries were caused by an "accident arising out of the operation, maintenance or use of a motor vehicle", and whether Oklahoma's Uninsured Motorist Statute, 36 O.S.1981 § 3636, covers such injuries.

The purpose of uninsured motorist insurance coverage "is to protect the insured from the effects of personal injury resulting from an accident with another motorist who carries no insurance or is underinsured." *Uptegraft v. Home Insurance Co.*, 662 P.2d 681, 684 (Okl.1983). See also *Biggs v. State Farm Mutual Automobile Insurance Company*, 569 P.2d 430 (Okl. 1977). "[T]he purpose of our uninsured motorist statute is to afford the same protection to a person injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance...." 569 P.2d at 433.

The policy issued by State Farm, in regard to uninsured motorist coverage, provides:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

Our Supreme Court has not decided the precise issue of whether uninsured motorist coverage is applicable to a situation in which the injuries caused by the uninsured motorist tortfeasor were "intentional" acts and whether "intentional" acts may constitute an "accident" for purposes of invoking uninsured motorist coverage. In *Hulsey v. Mid–America Preferred Insurance Company*, 777 P.2d 932 (Okl.1989), the question of whether an intentional shooting of an insured driver from an unidentified vehicle was covered by an uninsured motorist policy was raised in the trial court and decided by the Court of Appeals. On certiorari, the Supreme Court determined that the motion for summary judgment granted in the trial court should have been treated as a motion to dismiss, and looked at the petition to determine if it was possible to state a claim for relief under uninsured motorist coverage. Because the plaintiff had pled in the alternative, the Court determined that the pleadings were sufficient to state a claim for relief under uninsured motorist coverage. The Court held that the plaintiff's petition was sufficient because one of the possible factual scenarios "would unveil *prima facie* an unintentional act within the ambit of the insurance policy's hit-and-run UM coverage mandated by the provisions of 36 O.S.1981 § 3636." 777 P.2d at 937. It might be argued that it is possible to infer from the Court's language that if only intentional acts of the tortfeasor had been alleged in the plaintiff's petition, it would have been insufficient to come within the hit-and-run provisions of the subject uninsured motorist policy. However, the Supreme Court did not say, and did not decide, whether *intentional* acts came within the uninsured motorist coverage involved therein. In a footnote, the Court stated:

> 20. On this appellate record, we refrain from answering the question whether the harm which caused the insured's death must be treated as an "accident."

777 P.2d at 937. Also absent from the opinion is whether an "accident" may arise from intentional acts of the tortfeasor when viewed from the perspective of an insured victim, such as Tyler in the present case.

Black's Law Dictionary, 5th Edition, defines "accident", in part, as "an event which under the circumstances is unusual and *unexpected by the person to whom it happens;* ...." (Emphasis added). In the context of an insurance contract, Black's defines "accident":

> An accident within accident insurance policies is an event happening without any human agency, or, *if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens.* (Emphasis added).

Black's view of "accident", is similar to that found in cases of other jurisdictions. See *Race v. Nationwide Mutual Fire Insurance Company,* 542 So.2d 347 (Fla.1989); *Leatherby v. Willoughby,* 315 So.2d 553 (Fla.App.1975); *Celina Mutual Insurance Company v. Saylor,* 35 Ohio Misc. 81, 301 N.E.2d 721 (1973). In light of the purpose of such coverage, we find this definition of accident to be preferred in the uninsured motorist context. *Uptegraft v. Home Insurance Co.,* supra; *Biggs v. State Farm Mutual Automobile Insurance Company,* supra. The focus should be on the insured who has contracted with his company for insurance when an uninsured motorist tortfeasor injures him. In *Leatherby,* supra, it is stated, at page 554:

> Under uninsured motorist coverage the innocent injured party, not the intentional tortfeasor, is the 'insured'; and clearly, viewing the matter from the standpoint of the innocent victim, the injury is an 'accident.'

The *Leatherby* court quotes approvingly, at pages 554–555, from *Celina Mutual Insurance Company v. Saylor,* 301 N.E.2d at 723:

> [In this case] we deal with the subject of uninsured motorists coverage. The [injured parties] have paid the insurance premiums and have consciously contracted with the [carrier] for protection. The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.
>
> All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to [harm] herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from the risk of injury caused by an uninsured third per-

son it is the court's belief that the provisions of the insurance policy must be construed most favorably from the insured's viewpoint.

*Leatherby*'s reasons were reinforced by the fact that Florida law required uninsured motorist provisions in automobile liability insurance policies, unless affirmatively rejected, and such protection was designed for the benefit of the injured person, not insurance companies or motorists who cause the damage. 315 So.2d at 555.

We hold that intentional acts of an uninsured tortfeasor causing injury to an insured *may* be considered an "accident" for purposes of uninsured motorist protection when viewed from the viewpoint of the injured person. So viewed, Tyler's injuries were accidental. However, whether the injuries "aris[e] out of the operation, maintenance or use of an uninsured motor vehicle," must also be considered.

The standard of causation for liability in automobile insurance cases is not proximate cause, but is one of causal relationship or connection. See *Home Indemnity Company v. Lively,* 353 F.Supp. 1191 (W.D.Okl.1972). The United States Court of Appeals for the Tenth Circuit held (using Minnesota law) the accident must be a natural and reasonable incident or consequence of the use of the motor vehicle. The fact the automobile was used preceding the accident does not establish a sufficient causal connection. See *Gilbertson v. State Farm Mutual Auto Ins.,* 845 F.2d 245 (10th Cir.1988), citing *Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies,* 304 Minn. 179, 229 N.W.2d 516 (1975). The causal connection can be severed by any intervening act of independent significance. *Gilbertson v. State Farm Mutual Auto Ins.,* 845 F.2d at 248, citing *Holm v. Mutual Service Casualty Insurance Co.,* 261 N.W.2d 598 (Minn. 1977).

In *Race v. Nationwide Mutual Fire Insurance Co.,* 542 So.2d 347 (Fla.1989), the insured was rear-ended by an uninsured motorist at a stop light. The insured got

out of his car to exchange information and to discuss what to do. The uninsured motorist thought the insured was reaching for a gun when he reached inside a bag to get his insurance information, and knocked him to the ground and hit him when he tried to get up. The Florida Supreme Court held that UM coverage could be applicable when an innocent person is injured by the intentional act of an uninsured motorist, accepting the rationale of *Leatherby Insurance Co. v. Willoughby,* supra. The court analyzed the causation issue for purposes of uninsured motorist insurance as to whether the incident arose out of the ownership, maintenance or use of a motor vehicle, and held that UM coverage is intended to provide the insured with coverage equivalent to the liability coverage prescribed by the Financial Responsibility Law. Therefore, the language "arising out of ..." contained in a UM policy should be construed as it is in automobile liability policies. The court quoted from Appleman, Insurance Law and Practice (Buckley ed.), § 4317 as follows:

> The word 'coverage' as used in automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
>
> Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation. (Footnotes omitted).

542 So.2d at 349. The *Race* court held that the personal injuries of the insured were not covered by his uninsured motorist policy. They were not caused by the minor traffic accident. They occurred when the uninsured motorist assaulted Race. The court stated:

> The most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties. It had nothing to do with Race's injuries,

which only came about several minutes later when Thompson thought Race was reaching for a gun.

Assuming the issue were liability coverage for Thompson and that Thompson's actions which caused the injury were negligent rather than intentional (thereby obviating any intentional act exclusion), no one could reasonably say that the act which caused the injury was covered under Thompson's *automobile* liability policy. The same analysis is applicable to uninsured motorist coverage because the accident must arise out of the use, maintenance, or operation of the uninsured motor vehicle.

Oklahoma's uninsured motorist statute also requires uninsured motorist provisions in automobile liability insurance policies, unless affirmatively rejected, in an amount "not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, ...." 36 O.S.1981 § 3636(B). The reasoning of the Florida court is persuasive as to the issue herein.

■ In the present case, there is no evidence that Long's car ever touched Tyler or Tyler's car, although this would not necessarily be required in order to invoke uninsured motorist coverage. Oklahoma has held that uninsured motorist coverage is applicable for injuries received from a hit-and-run accident even when there is no physical contact. See *Biggs v. State Farm Mutual Automobile Insurance Company,* 569 P.2d 430 (Okl.1977). There is no evidence that Tyler was injured before he and Long got out of their cars. The motor vehicle of the tortfeasor, Long, was used to create hostility and to bring about the circumstances which led Tyler to stop his car near a police car. However, he was not injured until they were out of the cars and Long began beating him with his fists. Although it can be argued that Tyler would not have been in that place at that time if Long had not tried to run him off the road, the injuries Tyler received did not arise out

of the use of Long's automobile. There was no causal connection between the uninsured motor vehicle and Tyler's injuries. As in *Race v. Nationwide Mutual Fire Ins. Co.*, supra, the injuries occurred only after the parties had left their automobiles. The causal connection required for uninsured motorist coverage may not be a remote cause.

The trial court correctly sustained Appellee's motion for summary judgment.

AFFIRMED.

HUNTER and MacGUIGAN, JJ., concur.