424 So.2d 178 (1983)
Daniel M. NOVAK, As Personal Representative for Beverly Ann Novak, Appellant,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellee.
No. 81-869.
District Court of Appeal of Florida, Fourth District.
January 5, 1983.
M. Daniel Hughes of Chappell, Brandt & Gore, P.A., Fort Lauderdale, for appellant.
Clark J. Cochran, Jr., of Hainline, Billing & Cochran, P.A., Fort Lauderdale, for appellee.
DOWNEY, Judge.
The issue in this case is whether the injuries and eventual death of Beverly Ann Novak arose out of the ownership, maintenance or use of an automobile so as to entitle her personal representative to personal injury protection benefits as provided in the insurance policy issued by appellee. The trial judge held the injuries and death did not arise out of the ownership, maintenance or use of the automobile and awarded appellee a summary final judgment.
The bizarre factual background is undisputed. Beverly Ann Novak lived at home with her parents. As she was about to drive away from the house one morning, a stranger, Robert Lee Endicott, approached *179 her car and asked for a ride. When Beverly refused, Endicott pulled out a pistol and shot her in the face, dragged her out of the car, and fled in the vehicle. Several months later Beverly died from the injuries. Beverly's father, as personal representative of her estate, filed a claim with appellee for personal injury protection benefits contained in a policy which covered the automobile in question. When the claim was denied, this suit was instituted. The trial court granted a summary final judgment for appellee on the ground that the decedent's injuries did not arise out of the ownership, maintenance, or use of the automobile because there was insufficient causal connection between the use of the vehicle and the attack. We hold the trial judge's analysis was incorrect and thus we reverse.
In a plethora of cases throughout the country, courts have attempted to define or describe the meaning of the standard insurance clause providing coverage for accidents arising out of the ownership, maintenance, or use of a motor vehicle. However, this elusive phrase continues to be the focal point of litigation because of the myriad factual situations to which it must be applied. Numerous Florida cases have construed the clause in question but, as several of the cases have noted,[1] no clear uniformity exists as to the meaning to be ascribed to these terms.
It is quite well established that the term "arising out of" is broader in scope than the words "caused by"; the term is understood to mean "originating from," "having its origin in," "growing out of," or "flowing from."[2] While some causal relationship or nexus must exist between the ownership, maintenance or use of the vehicle and the injury, a direct proximate causal relationship in the strict legal sense is not required.[3] However, since there is such a disparity in the judicial constructions arrived at in the various cases, it hardly seems productive to embark upon a tedious analysis of the factual situations presented in all types of cases. For example, one case held that a passenger bitten by a dog being transported in the car sustained an injury arising out of the use of the vehicle,[4] while another court held that a passenger who was beaten up by a fellow passenger did not receive an injury arising out of the use of the vehicle.[5] A personal injury caused by a beer mug thrown from a moving car was determined to be an injury arising out of the use of the vehicle,[6] but another court held that an injury to an occupant of a vehicle which went out of control because of a bottle thrown from another moving car was not an injury arising out of the latter vehicle's use.[7] As a final example, a person whose hand was smashed by a boat and trailer connected to the car while he was trying to disconnect the taillight wires was held to be covered because the accident arose out of the use of the vehicle,[8] while an owner who was injured as he entered his car by an unknown assailant lurking in the back seat and later dumped out of the car while unconscious was held not to be covered.[9] No doubt, in some measure the disparity *180 in construction is due to the type of contract in which the phrase is used. Some cases are construing Exclusions in Homeowners policies, while others are dealing with liability policies extending coverage. Be that as it may, we believe that restricting our study to the various assault cases which have involved a construction of the clause in question will prove most productive in the resolution of this case.
Generally, the cases involving an assault on or by an occupant in a motor vehicle hold that the injury does not arise out of the ownership, maintenance, or use of the vehicle.[10] The common thread running through many of these cases is that the vehicle is the mere situs of the attack which could as well have occurred anywhere;[11] that there is no causal relationship between the assault and the use of the vehicle. Thus, in Sabatinelli v. Travelers Insurance Company, 369 Mass. 674, 341 N.E.2d 880 (1976), the driver of a car stopped the car, loaded his gun and shot an unknown pedestrian who was walking along the street. The court held the accident did not arise out of the ownership, maintenance, or use of the car because the conduct that caused the injury was unrelated to the use of the vehicle. A similar conclusion was arrived at by the Supreme Court of North Carolina in Nationwide Mutual Insurance Company v. Knight, 34 N.C. App. 96, 237 S.E.2d 341 (1977). There, the driver of an automobile, chasing another vehicle, shot at the front vehicle and wounded an occupant. Once again, the court held that the shooting had no causal connection to the use of the automobile. In Love v. Farmers Insurance Group, 588 P.2d 364, 121 Ariz. 71, (Ariz. Ct. App. 1978), two assailants abducted a vehicle owner in his car. While one assailant drove the other administered a fatal beating to the owner with a metal candelabrum found in the car. Although the claimant argued that using some instrument from the car to administer the beating created the needed nexus, the court held there was no coverage because there was no causal relationship between the injury and the ownership, maintenance, or use of the vehicle.
If the facts of the present case were similar to the various cases referred to, we would not hesitate to find no coverage and affirm the trial judge. However, the shooting in this case was motivated by and a direct result of the assailant's request to ride in the vehicle and the victim's refusal. Endicott's attempted use of the vehicle and the driver's refusal prompted the conduct which caused the injury. It must be remembered that we are not looking for a proximate causal relationship in the resolution of this case; rather the inquiry should be whether the attack upon the decedent arose out of, or flowed from, the use of the vehicle. The answer seems rather clear to us that the decedent's refusal to allow Endicott to ride in the car, which she was operating, demonstrates a sufficient nexus to meet the requirements of the rule requiring a causal relationship. Therefore, we hold that PIP coverage was available for the accident in question. We have found only one case that would seem to conflict with our rationale distinguishing the present case from the general run of assault cases on this subject. That case is O'Key v. State Farm Mutual Auto. Ins. Co., 89 Mich. App. 526, 280 N.W.2d 583 (Mich. Ct. App. 1979). There, the victim was sitting in his car with the motor running, waiting for his brother when suddenly a stranger opened the door, pointed a gun at the victim, and mumbled something like, "let's go home." The victim put the car in reverse and accelerated. As the assailant was being flung away from the car, he fired several shots, one of which hit the victim. In finding no coverage, the court cited a previous Michigan case, which held:
"[W]hile the automobile need not be the proximate cause of the injury, there *181 still must be a casual connection between the injury sustained and the ownership, maintenance or use of the automobile and which casual connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." O'Key, 280 N.W.2d at 585.
The O'Key court then stated:
Applying this test to the case at bar leads us to conclude that the injuries sustained by plaintiff did not arise out of the ownership, operation, maintenance or use of the automobile. Although plaintiff was an occupant of an automobile at the time he sustained the injury, this is not a controlling consideration in resolving this issue. The automobile was not the instrumentality of the injury. Rather, its role in this matter was incidental. Plaintiff's occupancy of the car was a fortuity, in no way connected with the assault. Nor is an assault by an armed assailant upon the driver of a car the type of conduct that is "reasonably identifiable" with the use of a car. Since the injury in this case did not arise out of the ownership, operation, maintenance or use of the car, the trial judge properly granted defendant's motion for summary judgment in this case. O'Key, 280 N.W.2d at 585.
We would distinguish the O'Key case on several bases. We do not understand that the automobile must be the instrumentality of the injury nor do we believe the type of conduct which causes the injury must be foreseeably identifiable with the normal use of the vehicle.
Accordingly, we reverse the judgment appealed from and remand the cause for further proceedings.
LETTS, C.J., and BERANEK, J., concur.
NOTES
[1] O'Dwyer v. Manchester Insurance Company, 303 So.2d 347 (Fla. 3d DCA 1974); Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974).
[2] Indiana Insurance Co. v. Winston, 377 So.2d 718 (Fla. 4th DCA 1979); St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973); Watson v. Watson, 326 So.2d 48 (Fla. 2d DCA 1976).
[3] Auto-Owners Ins. v. Pridgen, 339 So.2d 1164 (Fla. 2d DCA 1976); Watson v. Watson, 326 So.2d at 48; National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971); 12 Couch On Insurance 2d, §§ 45, 56.
[4] National Indemnity Co. v. Carbo, 248 So.2d at 238.
[5] Green Bus Lines, Inc. v. Ocean Accident & Guar. Corp., 257 App.Div. 851, 12 N.Y.S.2d 420 (N.Y. App. Div. 1939).
[6] Valdes v. Smalley, 303 So.2d at 342.
[7] St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So.2d at 117.
[8] Auto-Owners Ins. v. Pridgen, 339 So.2d at 1164.
[9] Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981).
[10] 8D Appleman, Insurance Law & Practice, § 5173.45.
[11] Reynolds v. Allstate, 400 So.2d at 496; Love v. Farmers Ins. Group, 588 P.2d at 364; Okey v. State Farm Mutual Automobile Ins. Co., 89 Mich. App. 526, 280 N.W.2d 583 (1979); Stonewall Ins. Co. v. Wolfe, 372 So.2d 1147 (Fla. 4th DCA 1979).