481 So.2d 557 (1986)
WESTERN WORLD INSURANCE COMPANY, Appellant,
v.
Marvene GLEAVES; James Gleaves and Herndon Ambulance Company, Appellees.
No. 85-219.
District Court of Appeal of Florida, Fifth District.
January 16, 1986.
*558 Sharon Lee Steadman of Rumberger, Kirk, Caldwell, Cabaniss & Burke, P.A., Orlando, for appellant.
Beth A. Ferguson of Meyers & Mooney, P.A., Orlando, for appellees.
COBB, Chief Judge.
This appeal raises the issue of the extent of coverage of a malpractice insurance policy issued by the appellant, Western World Insurance Company (Western), to the appellee, Herndon Ambulance Company (Herndon). The dispute arose from an incident which occurred on January 4, 1978, on the campus of the University of Central Florida. The campus police received a call that an unidentified female was causing a disturbance at the campus library. A UCF police officer responded, and eventually placed the woman, identified as Ola May Hill, in his car. Hill removed all of her clothes and jumped out of the car, running across the campus. The officer went to the campus health center and asked for assistance. Marvene Gleaves and another nurse responded. They chased Hill across campus, finally calmed her down and persuaded her to put her clothes back on. Gleaves promised to accompany her to the hospital in the ambulance.
Meanwhile, Herndon had been requested to proceed to the university to pick up a mental patient. William Scalla was the attendant, and Marshal Kersey was the driver. The testimony at trial indicated that when the ambulance arrived, Gleaves and Hill were escorted into the back of the ambulance and the door was shut behind them. The ambulance attendants did not go into the ambulance. Once inside, Hill proceeded to the front of the ambulance where the engine was still running, with the keys in the ignition, which was standard operating procedure. Hill attempted to start the ambulance. Gleaves, unable to get out of the back of the ambulance, struggled with Hill for the keys. During the scuffle, Gleaves was injured. Her trial testimony indicated that the ambulance attendants did not respond to her pleas for help during the struggle.
Gleaves sued Herndon, Scalla, Kersey and Western in one count alleging malpractice. Another count joined Herndon's auto insurance carrier, United States Fidelity & Guaranty Company, and was based on negligence. Western denied coverage and cross-claimed against USF&G seeking a declaratory judgment that coverage was not provided by its policy because of an exclusion therein applicable to incidents covered under a standard automobile insurance policy. Prior to trial, USF&G settled with the plaintiff.
At trial the testimony revealed the facts related above. An expert in emergency care testified and gave his opinion that a paramedic, either Kersey or Scalla, should have stayed with Hill in the ambulance. At the conclusion of the evidence, both Gleaves and Herndon moved for a directed verdict against Western on the coverage issue. The trial court granted the motion on the ground "that if Herndon is liable, it is for the negligence of their employees as medical personnel, not in the loading or unloading or driving of the ambulance."
At the conclusion of the trial, the jury returned a verdict finding Kersey 45% negligent, Scalla 50% negligent and Gleaves 5% negligent. Judgment was entered for the total damages against Western, as the malpractice carrier for Herndon, and Western appealed.
The appellant first contends that its policy did not provide coverage for Gleaves because malpractice liability is predicated upon privity, and there was no privity (i.e., *559 client-patient relationship) between Herndon and Gleaves. The appellees, on the other hand, contend the policy coverage language is broad enough to encompass the injury to Gleaves as one arising out of malpractice. We need not resolve this dispute, however, because the appellant's second point urged on appeal is dispositive  i.e., even assuming the basic coverage language encompasses Gleaves, an exclusion thereafter in the policy clearly applies.
Section 1(d) of the policy reads:
This policy does not apply:
* * * * * *
(d) To any liability of the insured which would be covered by a standard automobile public liability policy; ...
The appellant cites a number of cases wherein Florida courts have broadly interpreted the standard automobile policy coverage of "accidents arising out of the ownership, maintenance or use of any automobile." See, e.g., Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984); Allstate Insurance Co. v. Gillespie, 455 So.2d 617 (Fla.2d DCA 1984); National Merchandise Company, Inc. v. United Service Automobile Assn., 400 So.2d 526 (Fla. 1st DCA 1981); United States Fidelity & Guaranty Co. v. Daly, 384 So.2d 1350 (Fla. 4th DCA 1980); National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971). The controlling case appears to be Novak. In that case, one Beverly Ann Novak, while in her car and about to drive away from her residence, was approached by a deranged stranger, who asked her for a ride. Upon her refusal, he shot her in the face and took the car. Her estate sought PIP coverage from her carrier, and suffered an adverse summary judgment from the trial court. On appeal, this judgment was reversed by the Fourth District[1] on the following rationale:
[T]he shooting in this case was motivated by and a direct result of the assailant's request to ride in the vehicle and the victim's refusal. Endicott's attempted use of the vehicle and the driver's refusal prompted the conduct which caused the injury. It must be remembered that we are not looking for a proximate causal relationship in the resolution of this case; rather the inquiry should be whether the attack upon the decedent arose out of, or flowed from, the use of the vehicle. The answer seems rather clear to us that the decedent's refusal to allow Endicott to ride in the car, which she was operating, demonstrates a sufficient nexus to meet the requirements of the rule requiring a causal relationship. Therefore, we hold that PIP coverage was available for the accident in question... .
424 So.2d at 180.
Upon review, the Florida Supreme Court approved the holding of the Fourth District, noting that the clause, "arising out of the use of a motor vehicle" in section 627.736(1), Florida Statutes (1981), is a general, comprehensive term intended to effectuate broad coverage, and to be liberally construed in favor of the insured. Applying the rationale of Novak to the instant facts, it seems apparent that the injury to Gleaves arose from the use of the motor vehicle (Gleaves and Hill struggling within the vehicle for control of the key) just as much as the injury to Novak, who was shot from outside the vehicle by a person seeking to gain control of the vehicle.
Accordingly, we find that the exclusion in the Western policy was applicable, and that the trial court erred in finding coverage under that policy. Therefore, we reverse and remand for entry of a judgment for the appellant.
REVERSED.
UPCHURCH and SHARP, JJ., concur.
NOTES
[1] Novak v. Government Employees Insurance Co., 424 So.2d 178 (Fla. 4th DCA 1983).