CANAL INSURANCE COMPANY,
Plaintiff,

v.

Jeffrey AXLEY, James Mark Bass, and
Ryan's Trucking, Inc., Defendants.

No. 1:08–cv–01029.

United States District Court,
W.D. Tennessee,
Eastern Division.

Dec. 9, 2009.

Jonathan David Stewart, R. Dale Thomas, Rainey Kizer Reviere & Bell–Main St., Jackson, TN, for Plaintiff.

Kyle E. Crowe, Law Offices of Kyle Crowe, Martin, TN, R. David Strickland, Law Offices of R. David Strickland, Jackson, TN, Nicholas J. Owens, Jr., Owens Law Firm, Memphis, TN, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

J. DANIEL BREEN, District Judge.

Pending before the Court is Plaintiff, Canal Insurance Company's, Motion for Summary Judgment (Docket Entry ("D.E") No. 57), to which Defendant, Ryan's Trucking, Inc., has responded. (D.E. No. 61.) For the reasons set forth hereinafter, the Court **GRANTS** Plaintiff's motion.[1]

## FACTUAL BACKGROUND

Canal Insurance Company ("Plaintiff" or "Canal"), is a Greenville, South Carolina corporation that issued a policy of automobile liability insurance (the "Policy") on June 15, 2001 to Ryan's Trucking, Inc. ("Ryan's Trucking"), headquartered in Lawton, Oklahoma. (D.E. No. 28, Amended Complaint, ¶¶ 1, 4, 7.) At all times relevant to Plaintiff's present motion, Defendant James Mark Bass ("Bass"), an Oklahoma resident, was a truck driver, employed by Ryan's Trucking. (Id. at ¶¶ 3, 11, 12.) Defendant Jeffrey Axley ("Axley") is a resident of Weakley County,

Tennessee, and is the plaintiff in a related tort action before the Court, out of which the present lawsuit arises.[2] (Id. at ¶¶ 2, 8–10); See Axley v. Bass et al., No. 1:07–cv–1205. As the circumstances of the tort lawsuit are vital to the determination of this matter, the Court will provide a brief description of the allegations contained therein.

On October 24, 2006, Axley, who was an employee of Goodyear Tire & Rubber Company ("Goodyear")[3] in Union City, Tennessee, was participating in a "picket line" on Goodyear's property. (No. 1:07–cv–1205, Axley v. Bass et al., D.E. No. 25, Amended Complaint, ¶¶ 4, 5, 8.) Bass, who was delivering a load to Goodyear in his capacity as a truck driver for Ryan's Trucking, "wrongfully" attempted to drive his vehicle through the picket line, past the picketers. (Id. at ¶ 8.) Axley does not allege, and none of the evidence suggests, that Bass's vehicle ever struck anyone, and no facts indicate that the vehicle itself in any way caused any damage or injury to the picketers. However, after a group of angry protestors surrounded Bass's truck, he exited the vehicle "with a wooden club and severely beat [Axley] with the same."[4] (Id.) As a result of the altercation, Axley

---

1. Both Canal Insurance Co. and Ryan's Trucking filed memoranda of law exceeding 20 pages in length in connection with this summary judgment action without first obtaining leave of the Court to exceed the page limit. Counsel for both parties are admonished to familiarize themselves with the local rules for this district, particularly L.R. 7.2(e), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn., which states, "Memoranda in support of or in opposition to motions [for summary judgment] *shall not exceed twenty pages without prior court approval, including the statement of facts.*" Id. (emphasis added). Future violations of this rule could result in the offending briefs being stricken from the docket.

2. Axley voluntarily dismissed his underlying tort action without prejudice on November 20, 2009. (No. 1:07–1205, Axley v. Bass et al., D.E. No. 57.) Because Tennessee law allows Axley one year during which he can re-file his

claim, the possibility of Plaintiff's exposure under the Policy remains.

3. Axley originally named Goodyear as one of the defendants in his lawsuit. However, Goodyear filed a motion for summary judgment (No. 1:07–1205, Axley v. Bass, et al., D.E. No. 41), which Axley did not oppose. As a result, Goodyear was terminated as a party in the underlying action on April 9, 2009. (Id., D.E. No. 51.) Goodyear is not a party to the present suit initiated by Canal.

4. There is a factual dispute as to whether Bass actually hit Axley with the wooden club, as Axley alleges. Instead, Bass avers that Axley's injuries resulted from Bass's grabbing him and using him as a human battering ram, after which Axley struck his head on a hard surface in a nearby ditch. (D.E. No. 57, Bass Deposition, pp. 97–98.) In any event, this dispute is of no consequence in Canal's current action; what appears undisputed is that

sustained injuries for which he demands damages under a number of different legal theories. (*Id.*) Against Bass, Axley alleges common law and statutory negligence, reckless driving, and assault and battery. (*Id.* at ¶¶ 9–11, 13.) Against Ryan's Trucking, Axley asserts liability under theories of agency and vicarious liability, as well as negligent entrustment, hiring, supervision, and training. (*Id.* at ¶¶ 12, 14–16.)

Upon removal of Axley's lawsuit to this Court, Canal filed this declaratory judgment action seeking a determination that it was not obligated to indemnify or provide a defense for Ryan's Trucking or Bass. (D.E. No. 28, Amended Complaint, ¶ 13.) On, August 26, 2008, Canal obtained a default judgment against Bass in this matter, resulting in its contentions against him being deemed admitted. (D.E. No. 44, Order Granting Default Judgment.) The sole issue before the Court is whether the Policy obligates Plaintiff to indemnify and/or provide a defense for Ryan's Trucking based on the allegations in Axley's amended complaint in the previous pending tort action.

### STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that

judgment ... should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Ra-*

*dio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[ ] of action." *Lord v. Saratoga Capital, Inc.,* 920 F.Supp. 840, 847 (W.D.Tenn.1995) (citing *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva,* 31 F.3d 375, 379 (6th Cir.1994).

Issues of contract interpretation, such as the one currently before the Court, are especially appropriate for summary judgment because "the interpretation of a contract ... is a matter of law for the Court to resolve." *Whitehorse v. Johnson,* 156 P.3d 41, 47 (Okla.2007) (footnote omitted).

---

Axley was not injured by any of Bass's actions prior to exiting his vehicle.

## APPLICABLE LAW

■ In this case, the Court is called upon to interpret the meaning of a contract, which is a matter of state law. The contract at issue—the Policy—does not contain a choice-of-law provision. However, Canal and Ryan's Trucking agree that Oklahoma state law governs this dispute because the Policy was formed there. (D.E. No. 57, Motion for SJ, pp. 3–4; D.E. No. 61, Response to SJ Motion, pp. 8–9.) "In contract disputes, Tennessee follows the traditional rule of *lex loci contractus,* which provides that the construction of a contract is governed by the law of the state where the contract was made," absent contrary intent of the parties or a contravention of the strongly expressed public policy of the forum state. *Fred Montesi's, Inc. v. Centimark Corp.,* 2006 WL 1174480, at *6 (W.D.Tenn. May 2, 2006) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.,* 493 S.W.2d 465, 467 (Tenn. 1973)). Thus, because the parties are in agreement and because Tennessee has no strongly expressly public policy to the contrary, the Court will apply Oklahoma law in evaluating the parties' contentions.

## ANALYSIS

Canal advances two theories as to why the Policy does not obligate it to defend or indemnify Ryan's Trucking. First, the Plaintiff contends that the events precipitating Axley's injuries did not arise from the "ownership, maintenance, or use of the insured vehicle," as those terms are defined in the Policy, thus precluding Canal's duty to defend or indemnify either Defendant. (D.E. No. 57, Motion for SJ, pp. 15–23.) Related, but slightly different, is Canal's second argument: that the events that gave rise to Axley's claims against Bass[5] and Ryan's Trucking do not constitute an "occurrence," as that term is defined in the Policy. (*Id.* at pp. 5–15.) Conversely, Ryan's Trucking maintains that Canal is obligated to defend it because Axley's claims against it "give[ ] rise to the *potential* for liability." (D.E. No. 61, Response to SJ Motion, p. 9) (emphasis in original). After reviewing the parties' arguments, the Court finds that Plaintiff's first position—that the events did not arise from the "ownership, maintenance, or use of the insured vehicle"—is dispositive of this action.[6]

A. *Axley's Injuries Did Not Arise Out of the "Ownership, Maintenance, or Use" of an Insured Vehicle*

The Policy provides, in pertinent part, that Canal

---

5. As the Court has noted, owing to the default judgment, the claims against Bass no longer are at issue. However, for purposes of setting forth the parties' arguments fully, this Order will refer to Bass and the claims against him—particularly because Axley has alleged that Ryan's Trucking is vicariously liable for Bass's actions.

6. Even if this contention were not dispositive, applicable law and the facts of this case indicate that Bass's alleged tortious conduct leading to Axley's injuries does not fall within the Policy's definition of an "occurrence," and as a result, Canal would not be obligated to defend or indemnify Ryan's Trucking for any

liability that might arise from such conduct. The Policy's definition of an "occurrence" contemplates "an accident" that is "neither expected nor intended from the standpoint of the insured." (D.E. No. 1, Policy, p. 3.) Whether one believes that Bass beat Axley with a wooden club or that he swung him around like a human battering ram (*see supra,* footnote 4), the ultimate result is the same: the allegations and the facts indicate to the Court that Bass's actions were "voluntary, intentional, tortious, and wrongful," and they "were not caused by accident in any sense of the word." *U.S. Fidelity & Guaranty Co. v. Briscoe,* 205 Okla. 618, 239 P.2d 754, 758 (1951).

will pay on behalf of [Ryan's Trucking] all sums which [Ryan's Trucking] shall become legally obligated to pay as damages because of bodily injury or property damage ... caused by an occurrence *and arising out of the ownership, maintenance or use ... of an owned automobile ...* and [Canal] shall have the right and duty to defend any suit against [Ryan's Trucking] seeking damages *on account of such bodily injury* or property damage....

(D.E. No. 1, Policy, p. 3) (emphasis added). The Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (*Id.* at p. 4.) It defines "occurrence" as "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (*Id.* at p. 5.)

However, the Policy is silent as to the determination of whether or when an incident "arises out of the ownership, maintenance or use" of an insured vehicle, which causes the Court to turn to Oklahoma law on contract interpretation. Oklahoma case law is sparse on the issue of whether a particular tortious event "arises out of the ownership, maintenance, or use" of an insured vehicle, but analyses from courts in various other jurisdictions prove instructive. In *Kangas v. Aetna Cas. & Sur. Co.,* 64 Mich.App. 1, 235 N.W.2d 42 (1975), the Court of Appeals of Michigan encountered a set of facts similar to those giving rise to the instant action and held that the insurer did not have a duty to defend its insured. In *Kangas,* several individuals were found civilly liable for jumping out of their vehicle and assaulting a man walking alongside the road. *Id.* at 44. Defendant Kangas—who was driving the vehicle—held a policy of automobile insurance from Aetna, which contained language virtually identical to the above-quoted language in Canal's Poli-

cy. *Id.* Aetna refused to defend Kangas or the other defendants, contending that, *inter alia,* the plaintiff's bodily injury did not arise out of the ownership, maintenance, or use of the insured vehicle. *Id.* The trial judge granted Aetna summary judgment, and the appellate court affirmed, noting that "[w]here the injury inflicted is by an assault by an insured on a third party ... the great weight of authority is that the injury does not arise out of the ownership, maintenance or use of the automobile." *Id.* at 46.

However, Kangas and his co-defendants contended (as does Ryan's Trucking in the instant case) that but-for causation is all that is required to find that an injury arose out of the ownership, maintenance, or use of an insured vehicle; that is, even incidental involvement of the insured vehicle as nothing more than the mere means of transportation to the situs of the tort should be sufficient for a finding that coverage existed under the policy. *Id.* at 46–47. The court in *Kangas* rejected that theory, citing a Sixth Circuit case in which a passenger in a vehicle was injured when another passenger unsuccessfully attempted to throw a lit firecracker out of the closed car window. *Id.* (citing *Richland Knox Mut. Ins. Co. v. Kallen,* 376 F.2d 360 (6th Cir.1967)). The Sixth Circuit, citing the lower court's opinion, held:

> The cause of the accident was the lighting of the firecracker by Kallen, followed by his unsuccessful attempt to throw the firecracker out of the car window. The lighting and the throwing of the firecracker were not a causal result of Kallen's use of the car. His use of the vehicle had no necessary connection with the accident. Kallen's failure to throw the lighted firecracker away from the girl sitting next to him before it exploded was the cause of the injuries to the girl. The location of the parties in the car was purely incidental.

*Kallen,* 376 F.2d at 364–65. Likewise, the Michigan court concluded that the actions of Kangas and his co-defendants did not arise out of the ownership, maintenance, or use of the vehicle:

> In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. We do not find such a causal connection in this case. *The injury did not occur in the vehicle or while it was in motion. Assaults and fisticuffs are not normal foreseeable occurrences in the use of a vehicle.* [ . . . ] Viewing the incident in its entirety, we find that the injury did not arise out of the ownership, use and operation of the automobile as those terms are used within the policy.

*Kangas,* 235 N.W.2d at 50 (emphasis added).

Another analogous case is *Holm v. Mutual Service Cas. Ins. Co.,* 261 N.W.2d 598 (Minn.1977), wherein a municipality's insurer refused to defend a municipal police officer who tortiously injured the plaintiff during the course of an arrest. *Id.* at 599. The trial court held that the insurer had no duty to defend the policeman because, *inter alia,* his actions did not arise out of the ownership, maintenance, or use of the municipality's vehicle. *Id.* The court examined several Minnesota decisions holding tortious injuries to be unrelated to the use of the vehicle, and reasoned:

> In the instant case, it would seem that the physical injuries [the policeman] inflicted upon Holm were equally unrelated to the "use" of the police vehicle. [The policeman] had completely left the vehicle before he administered the tortious battery. The police car had served only to transport him to the scene of the incident. The battery could as easily have occurred had [the policeman] come upon the stationary motorcycle while on foot.

*Id.* at 603. After reviewing cases from other jurisdictions reaching the same conclusion, the Minnesota court concluded:

> In each of these decisions *the acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the "use" of the vehicle and the injuries inflicted. And this was so in spite of the fact that in each instance the subject auto was used to transport the tortfeasor(s) to the scene of the incident.* Read together, the cases fully support the general proposition that for an injury to "arise out of the use" of an automobile, it must be causally related to the employment of the vehicle for transportation purposes. In the words of the *National Mutual* court, "the vehicle itself must be an active accessory" to the injury sustained. *National Mut. Cas. Co. v. Clark,* 193 Miss. 27, 7 So.2d 800, 805 (1942).
>
> [ . . . ]
>
> [The policeman] used the police car only as a means of transportation to the scene of the arrest and battery. *Thereafter, [he] was physically separated from the vehicle, and no part or instrumentality of the vehicle ever came into contact with Holm.* Moreover, on the facts of this case, we believe this conclusion to be in accord with the plainest meaning of the phrase "arising out of the use." In no meaningful sense did Holm's personal injuries result from the use of the Princeton police vehicle.

*Id.* at 603–04 (emphasis added).

Additional cases supporting the Plaintiff's position include: *Farm Bureau Mut.*

*Auto. Ins. Co. v. Hammer,* 177 F.2d 793 (4th Cir.1949) (applying Virginia law, court noted "there can be no doubt" that automobile insurance policy was not intended to cover assault and battery, and thus, insurer was not obligated to defend or indemnify insured); *State Farm Mut. Auto. Ins. Co. v. Buckingham,* 919 A.2d 1111 (Del.2007) (assailant's act of getting out of the vehicle and assaulting another was an act of independent significance that broke causal chain between the use of the vehicle and the injuries suffered); *United Services Auto. Ass'n v. Aetna Cas. & Sur. Co.,* 75 A.D.2d 1022, 429 N.Y.S.2d 508 (1980) (where neither operation, nor driving function, nor physical condition of vehicle was a proximate cause of the injury, resulting occurrence did not arise out of its ownership, maintenance, or use); and *Day v. State Farm Mut. Ins. Co.,* 261 Pa.Super. 216, 396 A.2d 3 (Pa.Super.Ct.1978) (automobile insurance policies are designed to compensate victims for vehicle-related injuries; so there must be a connection between the vehicle and the harm done—an individual is covered by an insurance policy only by virtue of his function as the driver of the vehicle).

By contrast, in the following cases, the courts found coverage arising out the ownership, maintenance, or use of a vehicle: in *Novak v. Government Employees Ins. Co.,* 424 So.2d 178 (Fla.Dist.Ct.App.1983), the Florida appellate court reversed the trial court's ruling that the injury did not arise out of the ownership, maintenance, or use of the insured vehicle. The insured was inside her car, about to drive away from the house, when she was approached by an individual who demanded that she give him a ride. *Id.* at 178–79. When she refused, he shot her in the face and dragged her from the car. *Id.* The court noted several cases, similar to the ones described above, in which "the vehicle is the mere situs of the attack which could as well have occurred anywhere," saying that "[i]f the

facts of the present case were similar to [those cases], we would not hesitate to find no coverage and affirm the trial judge." *Id.* at 180. However, because the shooting was "motivated by and a direct result of the assailant's request to ride in the vehicle and the victim's refusal," the court found that the incident arose out of the ownership, maintenance, or use of the vehicle. *Id.* Similarly, the court in the aforementioned *Kangas* case cited several opinions, the common thread in which was the factual scenario of a driver or passenger(s) of a vehicle negligently throwing or causing the expulsion of some sort of projective from the vehicle, supporting a finding of coverage under the policy. *Kangas,* 235 N.W.2d at 49 (citing *Wyoming Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 467 F.2d 990 (10th Cir. 1972); *Home Indemnity Co. v. Lively,* 353 F.Supp. 1191 (W.D.Okla.1972); *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); *Valdes v. Smalley,* 303 So.2d 342 (Fla.Dist.Ct.App.1974); and *Westchester Fire Ins. Co. v. Continental Ins. Cos.,* 126 N.J.Super. 29, 312 A.2d 664 (N.J.Super.Ct.App.Div.1973)).

The decisions in the latter group are factually distinguishable from the instant case because Bass was neither in the vehicle when Axley was injured, nor did he throw anything out of the vehicle. (D.E. No. 57, Bass Deposition, pp. 89–94.) Moreover, unlike in the *Novak* case, Bass's vehicle itself was not inextricably linked with the events that gave rise to Axley's injury. At best, it could be argued that Bass might not have exited his truck had one of the picketers not hit it with his picket sign. (D.E. No. 57, Canal's Statement of Material Undisputed Facts, ¶¶ 9.) However, Axley's deposition testimony makes clear that he did not strike Bass's truck, and therefore, the act of another striking it could not have served as a causal link to, or motivating factor in,

Bass's eventual assault and battery on Axley. (No. 1:07–cv–1205, *Axley v. Bass et al.*, D.E. No. 41, Axley Deposition, pp. 91–92.) Furthermore, Bass's own deposition indicates that he did not exit his vehicle with the intent to harm anybody. (D.E. No. 57, Bass Deposition, pp. 92–112.) Thus, he must have formed such intent subsequent to exiting the vehicle, which breaks even the tenuous causal chain that might have been created when the unnamed picketer struck the vehicle.

■ The facts of this case are much more akin to the first group of cases discussed above—*Kangas* and *Holm*, et al.—and the Court agrees with the prevailing view expressed therein: that when an insured person engages in tortious or criminal conduct after exiting his vehicle and/or unrelated to the vehicle, such conduct cannot be said to have arisen out of the ownership, maintenance, or use of the vehicle—especially when the vehicle itself was neither the source of the injury nor being used in its intended fashion at the time of the events causing the injury. In this case, the only connections between Bass's vehicle and the circumstances leading up to Axley's injury are (1) that the vehicle was the means of transportation taking Bass to the situs of the events, and (2) that one of the picketers allegedly struck the front of the vehicle when Bass first entered the Goodyear premises. (D.E. No. 57, Canal's Statement of Material Undisputed Facts, ¶¶ 7–9.) The latter contention is addressed above, and the former is easily dismissed by reference to case law

on the subject, *supra* (*Kangas* and *Holm*, et al.). Any involvement of the vehicle in the chain of events ended when Bass exited the vehicle and then allegedly assaulted and battered Axley. As a result, Axley's losses did not arise out of the ownership, maintenance, or use of the insured vehicle, and Canal is not obligated to defend or indemnify Ryan's Trucking under the terms of the Policy.

### B. Whether Axley's Claims Give Rise to the Potential For Liability Against Ryan's Trucking

Notwithstanding the foregoing, Ryan's Trucking contends that Canal is misstating the relevant inquiry—that the proper question is whether Axley's complaint contains allegations that give rise to the *potential* for liability for the Defendant. (D.E. No. 61, Response to SJ Motion, p. 9.) Ryan's Trucking argues that because Axley alleges several negligence claims against Bass and it, Canal has a duty to defend, despite the fact that the intentional torts do not give rise to such a duty for the reasons given in Section A, *supra*. (*Id.*) In other words, Ryan's Trucking contends that because of Axley's allegations that Bass negligently operated his vehicle (for which Ryan's Trucking could be held vicariously liable) and that Ryan's Trucking negligently entrusted, hired, supervised, and trained Bass, the company potentially could be liable to Axley in the underlying action. It is this potential exposure that Ryan's Trucking argues obligates Canal to defend it.[7] (*Id.*)

---

7. Ryan's Trucking also alleges that there is a distinction between an intentional act and intentionally causing harm; and that because Axley has set forth several negligence claims against Bass, a jury potentially could find that he committed an intentional act without intending to cause harm. (D.E. No. 61, Response to SJ Motion, pp. 15–18.) Essentially, its argument is that every volitional action a person takes is an intentional act, but that not all intentional acts are done with the intent to

cause harm. For example, the act of walking to the store is an intentional act that, in most circumstances, is not done with intent to harm anyone. Nevertheless, the argument Ryan's Trucking posits is irrelevant in this case because any liability of Canal to Ryan's Trucking must be contractual in nature, arising out of the terms and conditions of the Policy. For the reasons explained in more detail in this Section, the mere fact that

However, it is Ryan's Trucking, not Canal, that misstates the proper inquiry on this point. The question is not whether Ryan's Trucking potentially could be liable to Axley; rather, it is whether the circumstances of the incident—combined with the scope of the Policy's coverage—create a duty on the part of Canal to defend or indemnify Ryan's Trucking. Ryan's Trucking may indeed be liable to Axley, but unless Canal has assumed responsibility for such liability in the Policy, the trucking company's liability to Axley is of no moment in the current action. The Policy in question is not a policy of general liability, but rather one insuring a vehicle. (D.E. No. 1, Policy.) As a result, actions, events, and injuries for which Ryan's Trucking may incur liability are not within the ambit of the Policy's coverage unless they are sufficiently connected to the ownership, maintenance, or use of an insured automobile. (*Id.* at p. 1.) In this case, the only injuries that Axley sustained—and thus, the only injuries for which Ryan's Trucking potentially could be liable to Axley— are the ones that resulted from Bass's actions after exiting the vehicle.

As Ryan's Trucking points out, it is true that Axley alleges in his amended complaint that Bass negligently operated his vehicle in driving through the picket line, and that such negligence "resulted in his injuries and damages." (No. 1:07–cv– 1205, *Axley v. Bass et al.,* D.E. No. 25, Amended Complaint, ¶¶ 10, 23.) It appears that that these negligence-related injuries, if supported by facts, would constitute bodily injuries covered by the Policy. However, the duty to defend is concerned with coverage, which is a matter of contract interpretation of a set of facts—as opposed to liability, which is a determina-

tion made upon application of the law to the facts. *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland,* 928 P.2d 298, 303 n. 8 (Okla.1996) (internal citations omitted). As a result, the insurer's duty to defend "is determined on the basis of information gleaned from the petition (and other pleadings), from the insured[,] and from other sources available to the insurer...." *Id.* at 303–04 (emphasis and footnotes omitted). "The duty to defend should *focus on the facts* rather than upon the complaint's allegations, which may or may not control the ultimate determination of liability." *Id.* at 303 n. 13 (citing *Texaco, Inc. v. Hartford Acc. and Indemnity,* 453 F.Supp. 1109, 1113 (E.D.Okla.1978)) (emphasis in original); *see also American Motorists Ins. Co. v. Southwestern Greyhound Lines, Inc.,* 283 F.2d 648, 649 (10th Cir.1960) (articulating the general rule "that the obligation of an insurance company to defend its insured is determined by the actual facts brought to the attention of the company rather than pertinent allegations contained in the complaint or petition of a complainant against the insured which are not true"). Thus, insurers and courts, in determining whether there is a duty to defend, should not necessarily look at the allegations in the complaint, but rather, should be "guided by the actual facts of which [they] ha[ve] knowledge." *Turley,* 928 P.2d at 303–04 n. 15 (internal citations omitted).

In the instant case, none of the evidence available to the Court indicates any factual basis for Axley's claims that he was injured as a result of Bass's negligent operation of his vehicle. Axley's amended complaint, his deposition, Bass's deposition, and the memoranda that Ryan's Trucking and Canal have submitted in connection

---

Ryan's Trucking might be liable to Axley— even accepting as true its contention that in this case there is a meaningful difference between an intentional act and intentionally

causing harm—does not obligate Canal to defend it unless the Policy creates such an obligation, which it does not in this case.

with this case all lead inexorably to the conclusion that Axley's injuries resulted solely from Bass's actions subsequent to exiting his vehicle. Such actions do not come within the scope of covered occurrences under the Policy, as detailed *supra*, Section A. Thus, despite Axley's bare allegations in his complaint that he was injured by Bass's allegedly negligent vehicular operation, the evidence presented to the Court indicates that Axley can prove no facts that would give rise to Canal's obligation to defend Bass or, by extension, Ryan's Trucking under a theory of vicarious liability for Bass's allegedly negligent acts.

Nor does Ryan's Trucking's potential liability to Axley under theories of agency or negligent entrustment, supervision, training, or hiring result in a duty on the part of Canal to defend Ryan's Trucking against such claims. As stated previously, Ryan's Trucking may indeed prove to be liable to Axley under these articulated legal theories, but this potential for liability is a separate inquiry from the question of whether Canal is obligated to defend or indemnify Ryan's Trucking against such liability. Absent a showing that these claims are related to injuries arising out of the ownership, maintenance, or use of an insured vehicle, Canal is not obligated under the Policy to defend Ryan's Trucking. As Canal has no duty to provide a defense for or to indemnify Ryan's Trucking against Axley's claims, it is entitled to summary judgment.

## CONCLUSION

For the reasons set forth hereinbefore, the Court **GRANTS** Plaintiff Canal Insurance Company's Motion for Summary Judgment (D.E. No. 57.)