NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1015-15T3

SELECTIVE INSURANCE
COMPANY OF AMERICA,

 Plaintiff-Respondent,

v.

TRH BUILDERS, INC., JAMES
MEEHAN, KATHLEEN MEEHAN, and
J. RICHARD CARNALL,

 Defendants,

and

ROBERT "BOB" MEYER and
BOB MEYER COMMUNITIES,

 Defendant-Appellant.

_______________________________________________

 Submitted February 16, 2017 – Decided September 11, 2017

 Before Judges Hoffman, O'Connor and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Burlington County, Docket No.
 L-2339-12.

 The Killian Firm, PC, attorneys for
 appellant (Ryan Milun and Eugene Killian,
 Jr., on the brief).
 Hill Wallack, LLP, attorneys for respondent
 (Todd J. Leon, of counsel and on the brief;
 Jonathan D. Pavlovcak, on the brief).

PER CURIAM

 Defendant Bob Meyer Communities, Inc., (BMC) appeals from a

September 25, 2015 order denying its motion for reconsideration

of a December 9, 2013 order, which had denied its and granted

plaintiff Selective Insurance Company of America's motion for

summary judgment. We reverse and remand for further

proceedings.

 I

 In or about 2000, BMC was the general contractor for an

entity that built residential dwellings. BMC contracted with

various subcontractors to perform the necessary work, one of

which was defendant TRH Builders, Inc. (TRH). TRH framed and

installed doors and windows in the dwellings. At the time it

performed its work, TRH was insured under commercial general

liability (CGL) policies issued by plaintiff. One policy was in

effect from March 16, 2001 to March 16, 2002, and the other from

March 16, 2002 to August 29, 2002.

 Well after the second policy expired, the homeowners of

five of the homes discovered some of the wood in the walls of

their homes was rotting. The homeowners eventually filed

complaints against BMC, which in turn filed complaints against
 2
 A-1015-15T3
TRH. In its complaints, BMC alleged the manner in which TRH

constructed the doors and windows of the subject homes permitted

water to infiltrate inside of the walls, causing the subject

damage. TRH failed to respond to any of BMC's complaints; BMC

eventually obtained default judgments against TRH, which the

court found partly responsible for the damage.

 TRH, which went out of business in or about 2005, did not

satisfy those judgments. BMC requested plaintiff pay the

judgments in accordance with the policies plaintiff issued to

TRH, but plaintiff refused. Plaintiff then filed a complaint

seeking a declaratory judgment it did not have a duty to

indemnify or defend TRH for the complaint filed by one of the

homeowners. In response, BMC filed a counterclaim seeking a

declaratory judgment the subject policies provided coverage for

the damages caused by TRH's defective work, including those that

were the subject of the judgments entered against BMC.

 After the close of discovery, both parties filed competing

motions for summary judgment. Among other things, plaintiff

argued there was no evidence either BMC or the homeowners were

actually damaged when either policy was in effect. Relying upon

one of its expert's reports, BMC countered there was conclusive

evidence damage to the property occurred during the policy

periods.
 3
 A-1015-15T3
 Among other things, engineer Thomas R. Kulp, BMC's expert,

stated improper flashing around the doors and windows caused

water to infiltrate through the stucco and stone cladding on the

homes. He claimed water infiltrated as soon as the homes were

constructed, and became trapped inside the walls. Within four

to six weeks of infiltration, mold developed. In a

certification submitted in support of BMC's motion and in

opposition to plaintiff's motion for summary judgment, Kulp

noted all of the subject homes were completed well within the

period TRH's insurance policies with plaintiff were in effect.

 Each policy provided, in pertinent part:

 1.b. This insurance applies to . . .
 "property" damage only if:

 (1) The . . . "property damage" is
 caused by an "occurrence" that
 takes place in the "coverage
 territory"; and

 (2) The . . . "property damage"
 occurs during the policy period.

 The policies defined "occurrence" and "property damage" as

follows:

 12. "Occurrence" means an accident,
 including continuous or repeated exposure to
 substantially the same general harmful
 conditions . . . .

 15. "Property damages" means:

 4
 A-1015-15T3
 a. Physical injury to tangible
 property, including all resulting
 loss of use of that property. All
 such loss of use shall be deemed
 to occur at the time of the
 physical injury that caused it; or

 b. Loss of use of tangible
 property that is not physically
 injured. All such loss of use
 shall be deemed to occur at the
 time of the "occurrence" that
 caused it.

 When it granted plaintiff's and denied BMC's respective

summary judgment motions, the trial court framed the issue as

whether the infiltrated water caused actual damage when the

policies were in effect. The court recognized it was BMC's

position the damage occurred when mold formed four to eight

weeks after water infiltrated, and that such infiltration began

once each home was constructed.

 However, the court concluded the law governing the subject

CGL policies did not mandate coverage "when the wrongful act

itself is committed[,] which [here] is the installation of the

windows[,]" but at "the time when the complaining party . . .

was actually damaged." The court acknowledged "[Kulp's report]

clearly identified and provided evidence that the mechanism for

the water intrusion was there," but then determined his report

failed to provide evidence of "any water intrusion, when it

occurred, or even if mold developed." Thus, because in its view
 5
 A-1015-15T3
no actual damage was sustained during either policy period, the

court held plaintiff did not have to provide coverage for the

subject damage, and granted plaintiff's and denied BMC's motion

for summary judgment.

 BMC filed a motion for reconsideration, essentially

contending the court overlooked key evidence. The court

reconsidered the evidence, but again found there was no evidence

of any actual damage occurring during the subject policy

periods, and denied the motion. In addition, the court held

because the damage was discovered after both policies expired,

plaintiff did not have to provide coverage.

 II

 On appeal, BMC asserts the following for our consideration:

 POINT I: THE TRIAL COURT INCORRECTLY HELD
 THAT THE PROPERTY DAMAGE TO THE VARIOUS
 LIBERTY PLACE RESIDENTS CAUSED BY THE FAULTY
 WORKMANSHIP OF TRH DID NOT MANIFEST DURING
 THE APPLICABLE POLICY PERIOD.

 POINT II: THE TRIAL COURT FAILED TO CONSIDER
 THE EXPERT REPORT PROVIDED BY BMC
 INCORRECTLY HOLDING THAT IT WAS A "NET
 OPINION."

 POINT III: AT A MINIMUM THERE WAS AN ISSUE
 OF FACT AS TO WHETHER THE PROPERTY DAMAGE
 MANIFESTED DURING THE SELECTIVE POLICY
 PERIOD AS BMC PRODUCED AN EXPERT REPORT ON
 THIS ISSUE AND SELECTIVE HAD USED
 CIRCUMSTANTIAL DATA RELATED TO THE DISCOVERY
 OF DAMAGE BY THE VARIOUS HOMEOWNERS.

 6
 A-1015-15T3
 POINT IV: NONE OF THE OTHER DEFENSES OR
 EXCLUSIONS IN THE INSURANCE POLICY RAISED BY
 SELECTIVE ARE APPLICABLE TO BAR COVERAGE AND
 THEREFORE, CANNOT SUPPORT SUMMARY JUDGMENT.

 POINT V: THE TRIAL COURT INCORRECTLY FAILED
 TO CONSIDER OR APPLY THE CONTINUOUS TRIGGER
 THEORY IN CONNECTION WITH THE TIME OF THE
 OCCURRENCE; PARTICULARLY GIVEN THE RECENT
 DECISION OF THE NEW JERSEY SUPREME COURT IN
 POTOMAC.

 POINT VI: BMC IS PROPERLY "STANDING IN THE
 SHOES" OF TRH IN THIS LITIGATION, AS VARIOUS
 JUDGMENTS HAVE BEEN ENTERED AGAINST TRH AND
 BECAUSE TRH IS DEFUNCT AND NO LONGER IN
 BUSINESS, BMC MAY PROPERLY SEEK A RECOVERY
 DIRECTLY FROM TRH'S INSURANCE CARRIER,
 SELECTIVE.

 It is undisputed the subject policies are what are known as

"occurrence" policies. Such policies provide coverage for

"property damage" claims the insured becomes legally obligated

to pay if the property damage is caused by an occurrence that

takes place during the policy period. An "occurrence" is

defined in both policies as "an accident, including continuous

or repeated exposure to substantially the same general harmful

conditions." BMC maintains the damage occurred during either

one of the policy periods; plaintiff argues the damage did not

occur until the problems caused by the deficient workmanship

were discovered.

 It is well established "the time of the occurrence of an

accident within the meaning of an indemnity policy is not the
 7
 A-1015-15T3
time the wrongful act was committed but the time when the

complaining party was actually damaged." Hartford Accident &

Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 27 (1984)

(quoting Miller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J.

Super. 564, 578 (App. Div. 1967)). In Hartford, the Court found

the defendant carrier had no duty to indemnify its insured

against a claim the insured had negligently failed to warn of

the dangers of a drug ingested by the minor plaintiff in the

underlying liability action, because there was no evidence the

plaintiff suffered any bodily injury during the policy period.

The Court held it is when damage has been sustained that

triggers coverage. Id. at 27-29.

 As explained in the treatise Appleman on Insurance, a:

 CGL policy will be triggered if the injury
 is determined to have "actually" occurred
 within the CGL policy period, irrespective
 of when the injury first manifested itself
 or when the third-party claimant was
 initially exposed to the injurious
 substance. The main issue is when the
 injury actually occurred. The injury need
 not be manifest, but the injury must exist
 in fact. The insurers' obligations to
 indemnify the insured arise when the real
 injury occurs during the policy period.

 [20 Eric M. Holmes, Appleman on Insurance
 § 129.2 at 204-05 (2d ed. 2002).]

 Here, through its expert, BMC provided evidence the mold

and rot formed during the policy period. According to the
 8
 A-1015-15T3
expert, that mold and rot caused the damage to the wood about

which the homeowners later complained and formed the basis for

the actions they brought against BMC. The evidence provided in

the expert's report raised a genuine, material issue of fact

sufficient enough to defeat plaintiff's motion for summary

judgment, see R. 4:46-2(c), at least with respect to plaintiff's

claim the actual damage did not occur during the policy period.

Thus, the trial court erred when it failed to recognize on BMC's

motion for reconsideration it had overlooked the significance of

probative, competent evidence. See D'Atria v. D'Atria, 242 N.J.

Super. 392, 401 (Ch. Div. 1990).

 Further, we do not agree the expert's opinion was net.

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . .

which forbids the admission into evidence of an expert's

conclusions that are not supported by factual evidence or other

data.'" Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting

Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). "Simply put,

the net opinion rule 'requires an expert to give the why and

wherefore of his or her opinion, rather than a mere

conclusion.'" State v. Townsend, 186 N.J. 473, 494 (2006)

(quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App.

Div. 2002)). The witness's conclusions can be based on his

qualifications and personal experience, with or without citation
 9
 A-1015-15T3
to academic literature. Id. at 495. We are satisfied from our

review of the subject expert's report there was sufficient

evidence within that document to overcome the claim the opinion

was net.

 Accordingly, we reverse the September 25, 2015 order

denying BMC's motion for reconsideration of the December 9, 2013

order, and vacate that portion of the December 9, 2013 order

that granted plaintiff summary judgment. For the reasons

provided, there is a question of fact whether actual damages

were sustained during the policy periods.

 However, we do not vacate the provision in the December 9,

2013 order that denied BMC's motion for summary judgment,

because plaintiff raised arguments in support of its motion for

summary judgment that were not considered and decided by the

trial court. Accordingly, we remand this matter to the trial

court so that it may consider those remaining arguments.

 Finally, we do not consider the arguments raised in Points

IV, V, and VI, because the trial court did not address such

arguments and, therefore, we decline to do so in the first

instance. See Ins. Co. of N. Am. v. Gov't Emps. Ins. Co., 162

N.J. Super. 528, 537 (App. Div. 1978).

 10
 A-1015-15T3
 Reversed and remanded for further proceedings consistent

with this opinion. We do not retain jurisdiction.

 11
 A-1015-15T3